# CASES

## ARGUED AND DETERMINED

### IN THE

# United States Circuit and District Courts.

---

WITTERS, Receiver, etc., *v.* SOWLES and others.

*(Circuit Court, D. Vermont. April 6, 1887.)*

1. NATIONAL BANK—LIABILITY OF OFFICERS—LOANS—DISCOUNTS.

   The officers of an insolvent national bank cannot be held personally responsible to creditors for losses on loans and discounts made by them in good faith, and, as they thought at the time, for the best interests of the bank, merely because such loans and discounts appear to have been unwise and hazardous when looked back upon.

2. SAME.

   Under Rev. St. U. S. § 5200, directors of a national bank, who make or assent to the making of a loan to any one person of a sum exceeding one-tenth of the capital stock of the bank, become personally and individually liable for all loss sustained thereby; but where the borrower, in such a case, is also one of the directors, he is not so liable, but simply as a debtor to the bank.

3. SAME—DIVIDENDS—LOSSES.

   Bank directors cannot be held personally liable for money paid out for dividends "to a greater amount than net profits after deducting losses and bad debts." (Rev. St. U. S. § 5204,) because there were debts bad in fact, but supposed to be good, when the dividends were declared and paid. Bad judgment on the part of the directors, as to the condition of the assets, without bad faith, does not make them individually liable.

4. SAME—LOAN—KNOWLEDGE.

   Directors of a national bank cannot be held to the common-law liability for inattention to duty as directors in not preventing a hazardous, imprudent, and disastrous loan, if such loan was made by their associates, without their knowledge, connivance, or participation.

In Equity.

*Chester W. Witters,* for orator.

*Albert P. Cross,* for defendant Burton.

*Edward A. Sowles,* for himself.

WHEELER, J. This bank was organized and continued in existence, with a capital stock of $100,000, under the laws of the United States relating to national banks. It failed and stopped doing business April 8, 1884, and was soon after placed in the hands of a receiver. The defendants, except Hall, Edward A. Sowles being president, and Albert Sowles cashier, were directors, with George W. Foster, now deceased,

v.31F.no.1—1

after February 11, 1880, and with H. H. Bowman until 1882, when he died, and with Hall since January 11, 1883. At the time of the failure, there were among the assets of the bank large amounts of paper, in various forms, taken for loans and discounts to one Marshall; large amounts taken for loans and discounts to Albert Sowles for his own use, and for others for whom he was surety and indorser; and to the amount of $30,000 for loans to Edward A. Sowles. The loans and discounts to Marshall, to the amount of $35,308.75, and all of the others, were made after February 11, 1880, and all were almost wholly uncollectible and valueless when the failure came. No dividends were declared in 1880, or in the first six months of 1881, and the bank had July 4, 1881, surplus and surplus funds to the amount of $64,000, or thereabouts. A dividend of 6 per cent. was declared on that day; another, of the same amount, November 1st; another December 6th; one of 5 per cent., July 4, 1882; one of 10 per cent., December 5, 1882; one of 3 per cent., May 1, 1883; and one of 5 per cent., November 6, 1883,—all of which were paid. Some of these dividends were declared when there were not sufficient assets, in view of subsequent events, to warrant making them. This bill is brought to charge the defendants, as directors, with the losses to the bank in consequence of these bad loans and discounts, and with the amounts of these dividends taken from its assets.

The directors all resided at St. Albans, where the bank was located, except Burton, who resided at Burlington. The business of the bank was managed principally by the cashier, who was of large experience, able, and competent, and of good reputation, and, until near the time of the failure, of considerable wealth. All the loans and discounts were approved of and made by him, and he voted for and concurred in all the dividends. The increase of the debt of Marshall appears to have been accomplished by bills of exchange drawn against existing values, and by the discount of business paper owned by him to such an extent as not to be in violation of any express law. Those who took part in it on behalf of the bank appear to have acted, in view of the liabilities he was already under to the bank, and of the condition of his business as then understood by them, in good faith, and as they thought would be for the best interests of the bank. They had no interest with him, nor any apparent object to accomplish by increasing his accommodations aside from taking the wisest course for the interests of the bank. As these loans and discounts have resulted, they were unwise and hazardous looked back upon, but they are to be considered as they could be looked forward to, and not from the present stand-point. In this view there is no just ground upon which any of the directors can be properly charged for that debt. *Scott* v. *Depeyster*, 1 Edw. Ch. 513; *Spering's Appeal*, 71 Pa. St. 11; Thomp. Liab. Off. 233.

The loans to Albert Sowles, and some of those for which he became liable as surety or indorser, appear to have been in violation of the provisions of section 5200, Rev. St. U. S., by which liabilities of any person to a national bank for money borrowed in excess of one-tenth of the

capital stock are prohibited. None of the directors who are living, and are defendants, is shown to have knowingly participated in or assented to any of the loans or discounts constituting the debts against him, or those for which he is liable as surety or indorser. The liability of Edward A. Sowles originated in a direct loan to him soon after February 11, 1880, of $36,000. This loan was in excess of one-tenth of the capital stock, and in direct violation of the provisions of section 5200. All those who were then directors, which includes all the defendants except Hall, knew of and assented to this loan. This is not disputed. Section 5239 provides that if the directors of any national bank shall knowingly violate, or permit any officer, agent, or servant to violate, any of the provisions of that title, which includes section 5200, the rights, privileges, and franchises of the bank shall be forfeited; and that in cases of such violation every director, who participated in or assented to the same, shall be held liable in his personal and individual capacity for all damages sustained in consequence of such violation. By force of these provisions, the defendants Albert Sowles and Burton, by their participation in and assent to this loan, became liable to the bank, as now represented by the orator, for all damages in consequence of it. The loan was made to Edward A. Sowles. He procured it in his own behalf, and became liable as debtor for it. He would not appear to be liable as participating in or assenting to it on behalf of the bank. *U. S.* v. *Britton,* 108 U. S. 193, 2 Sup. Ct. Rep. 526.

This bill is not brought to charge the defendants for money received by them as stockholders from dividends, but for losses to the bank itself for unlawfully or wrongfully declaring dividends. By section 5204, dividends to a greater amount than net profits, after deducting losses and bad debts, are prohibited; and debts on which interest is past due and unpaid for six months, unless well secured and in process of collection, are defined to be bad debts. The assets of this bank did not so consist of bad debts, within this definition, at the time when they were made, as to make the dividends improper. There were debts which were in fact bad in the result to an extent so great as to wipe out the profits from which dividends could be made when the later ones were declared. The defendant Burton is not shown to have participated in making the dividends. Those who did misjudged as to the value of the assets. The evidence does not warrant the conclusion that they took this method of dividing the assets of the bank among themselves when they knew that dividends could not properly be made. It is not considered, therefore, that the defendants are liable for the amount of the dividends because they were unlawfully or wrongfully declared. Whether those who received the dividends are chargeable for the amount received, on the ground that the money from which they were paid was needed to pay the liabilities of the bank, is a question not presented in this case. *Spering's Appeal,* before cited; Thomp. Liab. Off. 351; *U. S.* v. *Britton,* 108 U. S. 199, 2 Sup. Ct. Rep. 531.

It is strongly urged that the defendants are liable at common law for inattention to duty as directors, although not liable under the express

provisions of the statutes mentioned. This ground of liability is not applicable to the Marshall debt, for the circumstances of the increase of that debt are such that those who participated in it are not found to be liable. *A fortiori*, those who did not participate are not liable for that. If there is any liability in this behalf, it must arise upon the manner of the loans to Albert Sowles, and those for which he became liable, and for some smaller loans to Edward A. Sowles, and to some others for which he became liable. There were some of these latter for which the defendant Burton became liable as surety or indorser, and from which he has become discharged in the course of the receivership. He was, and always has since been, amply good for these liabilities, and none of the directors incurred any liability for negligence in trusting to his solvency. This question is narrowed down to whether the defendants Burton and Edward A. Sowles and Hall are liable for the loans on which Albert Sowles is liable, and which were made to him, because they did not prevent these loans.

The question as to the liability of directors of national banks for mere inattention was much considered in *Movius* v. *Lee, ante*, 298, in the Northern district of New York, lately decided. It was there held that directors were not liable for the acts of their associates in which they had no part, and of which they had no knowledge, and towards which they did not connive in any manner. Upon these principles, these defendants are not liable on account of the loans to Albert Sowles, or of those for which he became liable, because they did not participate in them, nor assent to or connive at the making of them, so far as has been made to appear.

There remains the liability of the defendants Albert Sowles and Burton for the loan to Edward A. Sowles. If there were liabilities of these defendants alone, or with other defendants for other loans, or for dividends, it would be somewhat anomalous to include them in a decree with this liability, which is entirely distinct, although of the same nature. It is not necessary to consider whether the liability of directors, under such circumstances, is for the whole debt, or only for the excess; for this loan, which was $36,000, in the first place, was reduced to $26,000, the exact amount of the excess, December 5, 1882. It then stood in the form of drafts of Edward A. Sowles,—one of $5,000, on H. B. Weeks, due January 8; one of $5,000, on B. C. Hall, due January 11; one of $5,000, on H. B. Weeks, due February 8; one of $5,000, on B. C. Hall, due February 11; and one of $6,000, on H. E. Lewis, due January 15, 1883.

These appear to have remained of the identical loan for which the money was passed over to him, with the full knowledge and assent of Albert Sowles and Burton, and of the other two directors now deceased. This debt was not, according to the evidence, further reduced, but was wholly lost. The damages resulting to the bank in consequence of this loan are equal to the amount of the sums due on these drafts, with interest from the times when they respectively fell due. This interest to April 6, 1887, amounts to $6,559.33, and the whole amount of the loss or damage resulting from this loan is $32,559.33. This money was

borrowed by Edward A. Sowles to pay for stock of the bank for the purpose of securing harmony among the officers and stockholders, and it is said in evidence that the transaction was reported to the comptroller of the currency, and received his approval. Whether his approval extended beyond the organization of the board of directors, who had lately been constituted, does not appear. If it did, he could not, and probably did not attempt to, vary any liability imposed by express statutes. It is suggested, also, that the conduct of the receiver who preceded the plaintiff has contributed to increase the loss from the poor assets. Such, however, does not appear to be the fact, and, if it did, it would not affect the liability of any of the defendants on account of this unlawful loan, unless some part of the loss resulting from the loan was due to it. When the directors let this sum of $36,000 of the money of the bank go into the hands of Edward A. Sowles, as money borrowed by him of the bank, they placed it outside of where the law authorized them to place it, and became liable, then and there, for the excess above the legal limit at least, and chargeable for it, if, in consequence, it should be lost. What occurred afterwards had no effect upon the liability, except as it may have varied the amount of the loss. The result is that the defendants Albert Sowles and Burton are chargeable for the amount of this loss. There is no occasion for an account of it, for the amount distinctly appears. The defendants Edward A. Sowles and Hall are not, upon these considerations, chargeable for any of the losses in this suit; but they are so connected with these matters that they do not appear to be entitled to costs.

Let a decree be entered that the defendants Albert Sowles and Burton are chargeable for the amount of the loss on the loan of $36,000 to Edward A. Sowles, ascertained to be $32,559.33, and that they pay that sum to the orator, with costs to be taxed, within 20 days from the entry of the decree, and that the bill be dismissed as to Edward A. Sowles and Hall, without costs.