BARBER ,*v.* KOLOWICH.

1. CORPORATIONS—DUTY OF DIRECTOR DEALING WITH CORPORATION.
A director of a corporation has a duty of exercising good faith and fairness and to make full disclosure in his dealings with the corporation.

2. SAME—DIRECTOR'S BREACH OF DUTY—RELIEF.
A corporation may rescind or recover undisclosed profits or have such other relief as required by the exigencies arising from director's breach of duty toward his corporation but there is no liability for damages when corporation suffers no loss from such breach of duty.

3. BANKS AND BANKING—DIRECTORS—CONCEALMENT—FRAUD.
In bank receiver's action against director for fraud in obtaining loans from bank, evidence showing concealment, at most, was merely as to precise particulars .of conveyance to director, that officers knew of his interest in the loans and that his participation gave them greater strength, that bank accepted borrower named and the security as ample but failing to show bank sustained a loss because of any concealment by director *held,* insufficient to base finding that loans were fraudulent.

4. SAME—FRAUD—APPRAISALS—CONFIRMATION BY ACTUAL SALES.
Claim that appraisals of property, upon which loans were made by bank of which plaintiff is receiver, were fraudulently excessive *held,* not sustained in action against director, his father, the appraiser, and others for fraud in obtaining loans from bank, where at time loans were made no suspicion of fraud then attached and appraisals were contemporaneously substantially confirmed by actual .sales.

5. SAME—LOAN TO DIRECTOR—FRAUD—CONSTRUCTION LOANS—EVIDENCE.
Claim by bank's receiver that moneys loaned director on 15 buildings were withdrawn before completion of some buildings against which loans were made *held,* not sustained by showing made where no attempt was made to reduce it to specific buildings with resulting loss.

6. SAME—LOANS TO DIRECTORS—STATUTES.

Statute requiring, as a condition precedent of loans by bank to its officers or employees, that loans be first submitted to the directors for their approval *held*, inapplicable in action for fraud in securing loans from bank where it accepted as mortgagors, parties who later conveyed the property to a director (2 Comp. Laws 1915, § 8020, as amended by Act No. 108, Pub. Acts 1919).

7. SAME—FRAUD—EVIDENCE—FINDINGS.

In action by bank's receiver against bank director, appraiser, cashier, and others for fraud in securing construction loans, brought after bankruptcy of director and tried without a jury, evidence *held*, to require finding that defendant director perpetrated no fraud, either actual or legal, which would render him liable in an action of tort.

Appeal from Wayne; Lamb (Fred S.), J., presiding. Submitted October 15, 1937. (Docket No. 98, Calendar No. 39,521.) Decided November 10, 1937.

Case by Everett W. Barber, receiver of State Bank of America, against George J. Kolowich and wife, Adolph Kolowich, Adolph E. Lark and Henry Fedeson and wife for damages for alleged fraud in securing mortgage money from bank. From judgment for plaintiff against George J. Kolowich and Henry Fedeson, defendant Kolowich appeals. Reversed.

*Neill E. Graham* and *Cook, Smith, Jacobs & Beake* (*O. L. Smith,* of counsel), for plaintiff.

*Savery, McKenzie & Hamilton* (*John A. Hamilton,* of counsel), for defendant George J. Kolowich.

FEAD, C. J. The declaration is in trespass on the case. On trial before the court plaintiff had judgment against defendants George Kolowich and

Henry Fedeson, and the case was dismissed as to the other defendants. Kolowich appeals.

In 1926, Kolowich was very extensively engaged in developing subdivisions, building homes and selling lots, as well as in other activities. He arranged with Fedeson, a building contractor, to erect 20 houses in the Irene Kolowich Subdivision in the city of Detroit. Fedeson was to construct the houses on a percentage basis, the precise terms of which are in dispute but are of little consequence. After a time and before the houses were completed, Kolowich and Fedeson had some dissension and Kolowich finished the construction himself. After beginning the erection of the houses with other funds, Kolowich desired to borrow money on real estate mortgages to finish the work.

Kolowich owned 400 shares of stock in the State Bank of America and was a member of the board of directors. His father, Adolph Kolowich, owned 100 shares and was vice-president and appraiser of the bank. The cashier was Adolph E. Lark.

Kolowich obtained loans from the Bank of Detroit in the sum of $3,500 per lot on five lots. The appraisers for the Bank of Detroit valued the lots and buildings at $7,000 per lot description. Kolowich desired to obtain loans of $4,000 per lot from the State Bank of America and he discussed the matter with the loan committee of the bank. Adolph Kolowich appraised each lot, with improvements, at slightly in excess of $8,000, thereby qualifying the loans for the savings department of the bank.

Kolowich testified that he did not wish to appear as borrower and mortgagor because he did not want his name connected with the subdivision at the time on account of its effect on other properties he was selling. It was handled as follows: Kolowich and

his wife were vendees in a land contract covering the 15 lots; warranty deeds were executed by Hecker and wife, vendors in the land contract, and Kolowich and wife, vendees, to Henry and Eleanore Fedeson, in groups of five lots on May 10, June 5, and June 29, 1926, respectively; Fedeson made written applications to the State Bank of America for the mortgage loans; they were approved by the loan committee; thereupon Fedeson and wife executed real estate mortgages to the bank in the sum of $4,000 per lot in three transactions, each covering five lots and occurring respectively on May 10th, June 9th, and July 14th.

The board of directors approved loans at its meeting on July 8th but the record is not plain as to the mortgages covered by such action. Fedeson and wife had no interest in the premises except in connection with the construction on a percentage basis. They executed back to Kolowich and wife a quitclaim deed of the 15 lots on June 2, 1926. Kolowich did not record the deed until November 21, 1927.

The proceeds of the loans were paid by the bank to Kolowich. Kolowich established a Henry Fedeson building account in the bank and deposited money therein, some or mostly from other sources than the loans. The money was withdrawn by Fedeson to pay the cost of construction of the houses.

The attorney for the bank approved the abstract title as being in Fedeson. The president of the bank and members of the loan committee knew that Kolowich was interested in the loans but, apparently, they were not informed of the precise method in which conveyances had been made. The president testified that the loans had greater strength

because of Kolowich's interest but they had been made strictly upon the basis of value of the security, the premises being deemed ample to safeguard the bank fully. Kolowich said he discussed the transaction with other directors of the bank. There was no testimony that any officer or director was ignorant of Kolowich's interest in the transaction.

Plaintiff's principal point is that Kolowich, a director, concealed from the officers and directors of the bank the precise nature of the relationship existing between himself and Fedeson, and thus committed a legal fraud on the bank, citing 1 Michie on Banks and Banking, p. 166, § 71, and p. 132, § 27. Kolowich having been discharged in bankruptcy, plaintiff sued in tort.

The court found that a legal fraud had been committed but not an actual fraud. The failure to find actual fraud is emphasized by the fact that the court dismissed the suit as to the cashier and appraiser.

The duty of a director of a corporation to exercise good faith and fairness and to make full disclosure in his dealings with the corporation is well settled. Where there is a breach of such duty the corporation may rescind or recover undisclosed profits or have such other relief as the exigencies require, 3 R. C. L. p. 465; 7 Am. Jur. p. 213. But there is no liability for damages when no loss occurs from the breach of duty, 1 Michie on Banks and Banking, p. 141.

The affirmative testimony, the lack of contradicting evidence and the surrounding circumstances leave ground for no other conclusion than that the loan committee and the officers and directors of the bank knew that Kolowich was interested in the Fedeson loans. The most that can be said about

concealment is that Kolowich failed to disclose the precise particulars of the conveyance of Fedeson back to Kolowich. Fedeson's title appeared upon the abstract.

The case is devoid of actual deceit or intent to defraud. With knowledge on the part of officers of the bank of Kolowich's interest in the transaction, the bank accepted Fedeson as the mortgagor and borrower and the securities as ample. Moreover, the testimony permits no finding that the bank sustained a loss from any concealment by Kolowich. The testimony of the president of the bank makes it clear that if it had known of the conveyance from Fedeson to Kolowich, the bank would have been the more willing to make the loan to Fedeson. We find no fraud at law in the loans.

Plaintiff further urges that the appraisals of the properties were fraudulently excessive.

The bank officials testified that Adolph Kolowich was so conservative in his appraisals that the bank lost business thereby. The appraisals of the property here involved approximated those of the Bank of Detroit. From March, 1926 to April, 1929, seven of the lots, mortgaged to the State Bank of America, were sold at prices ranging from $7,200 to $8,500. Plaintiff's witnesses placed the values much lower than did either of the bank appraisers or did the actual sales. Their estimates were not impressive. Now do we think that appraisals made at the time of a transaction, with no suspicion of fraud then attached to them, which formed the basis of transactions approved by the officers and directors of a bank and which were contemporaneously substantially confirmed by actual sales, should be overthrown long thereafter and made the basis of a

claim of fraud, in the absence of convincing testimony by satisfactory witnesses.

Plaintiff also contends that the loan moneys were withdrawn before the buildings had been completed. This does not satisfactorily appear by the testimony and, in any event, the claim is not made as to all the houses and there was no attempt to reduce it to specific buildings with resulting loss.

Plaintiff further contends that there was a violation of the statute 2 Comp. Laws 1915, § 8020, as amended by Act No. 108, Pub. Acts 1919, which provides that before loaning "any of its funds to its officers or its employees, such loans shall be first submitted to the directors of such bank for their approval." * This contention proceeds upon the theory that the loans were made to Kolowich. The fact is that the bank accepted Fedeson as the mortgagor and borrower and the loans were made to him.

We find that no fraud, either actual or legal, was perpetrated by Kolowich on the bank and which would render him liable in action of tort.

Reversed and remanded for entry of judgment of not guilty, with costs.

NORTH, WIEST, BUTZEL, BUSHNELL, SHARPE, POTTER, and CHANDLER, JJ., concurred.

---

* See 3 Comp. Laws 1929, § 11922 and Act No. 341, § 75, Pub. Acts 1937.—REPORTER.