BURTON B. PADDOCK, TRUSTEE IN BANKRUPTCY ET AL, v. C. J. SIEMONEIT ET AL.

No. A-1976. Decided March 2, 1949.
Rehearing overruled March 30, 1949.
(218 S. W. 2d, Series, 428.)

572

*Melvin F. Adler,* of Fort Worth, for Burton B. Paddock, Trustee in Bankruptcy, *Theron Lamar Caudle,* Asst. Atty. Gen., of Washington, D. C., and *Andrew D. Sharpe,* and *Frank K. Foster,* Special Assistants to the Attorney General of the United States, of Fort Worth, for the intervenor, United States, Petitioners.

It was error for the Court of Civil Appeals to hold that the word "willfully", as used in section 2707a of the Internal Revenue Code, means with "bad purpose," or with "evil motive". And that that part of such section should receive the same construction which is to be given to those parts of the Internal Revenue Code which imposes criminal penalties. Pecos & N. T. Ry. Co. v. Cox, 106 Texas 74, 157 S. W. 745; Texas & P. Ry. Co. v. Huber, 100 Texas 1, 92 S. W. 832; United States v. Murdock, 290 U. S. 389.

The Court erred in holding that C. J. Siemoneit might appropriate the funds of the corporation to his own use unless at the time the corporation was actually insolvent or that such appropriation caused insolvence. Said court also erred in refusing to apply to this case the rule that when a trustee speculates with the funds of the beneficiary the profits belong to said beneficiary, and that under the circumstances of this case a debtor-creditor relationship existed between Siemoneit, as manager of the company, and the company, which would permit him to direct the applications of the payments. Watts v. Gordon, 127 Tenn. 96, 153 S. W. 483; Brown v. Payne, 75 S. W. (2d) 484; Hall v. Crawford & Delphinis, 11 S. W. (2d) 804; 19 C. J. S. 125.

*Ernest May* and *Van Zandy Smith,* both of Fort Worth, for J. C. Siemoneit and others, resepondents.

So long as the drilling company was a going concern its funds were not being held in trust for creditors, hence the trustee in bankruptcy has no case as their representative. There was no pleading of proof that the corporation was insolvent at the time, nor that the loan to Siemoneit had any casual connection with the company becoming insolvent, nor that there was any intention on the part of anyone to delay, hinder or defraud a creditor. The most that could be said or claimed by the trustee in bankruptcy was subrogation of the liens discharged by Siemoneit with the funds advances by the corporation, which sums were repaid by Siemoneit, and the trustee is estopped to deny the effect of the payments. Lyons-Thomas Hardware Co. v. Perry Stoge Stove Mfg. Co. 86 Texas 143, 24 S. W. 16; Conrick v. Houston Civic Opera Assn. 99 S. W. (2d) 382; Strauss v. Brooks, 136 Texas 141, 148 S. W. (2d) 393; 32 Tex. Jur., 687.

MR. JUSTICE HART delivered the opinion of the Court.

The trustee in bankruptcy of Siemoneit Drilling Company, Inc., brought this suit against C. J. Siemoneit and his wife and others, seeking to establish a constructive trust in favor of the bankrupt corporation upon certain real estate and personal property. The United States of America intervened in the suit, asking for a judgment for a tax penalty against Mr. and Mrs. Siemoneit and foreclosure of a tax lien upon the same property. In a trial before the court without a jury, judgment was entered against the trustee in bankruptcy but in favor of the United States, as against C. J. Siemoneit. The Court of Civil Appeals affirmed the judgment against the trustee in bankruptcy, but reversed the judgment in favor of the United States and rendered judgment in favor of Siemoneit. 214 S. W. (2d) 651.

Applications for writ of error on behalf of the trustee and the Untied States have been granted. These applications present distinct questions and therefore will be considered separately.

The position of the trustee in bankruptcy is that C. J. Siemoneit was guilty of a breach of fiduciary duty in using funds borrowed from the corporation to purchase and improve property which he bought for himself, and that therefore a constructive trust was imposed upon the property in favor of the corporation, which can be enforced against all property into which the funds can be traced. Siemoneit's reply in effect under the facts in this case he was guilty of no breach of trust in borrowing money from the corporation and that the property in

question, which admittedly would ordinarily be exempt from execution to pay debts, is not subject to a constructive trust or an equitable lien to secure the repayment of the sums borrowed.

The corporation was formed in Delaware in 1941 and soon thereafter began doing business in Texas under a permit authorizing it to engage in a drilling business. C. J. Siemoneit owned 6,000 shares of the capital stock; his son J. Robert Siemoneit owned 500 shares, and an employee, E. R. Land, owned 480 shares, subject to a purchase option contract in favor of C. J. Siemoneit. The stock owned by the Siemoneits was paid for with the assets of a Texas corporation, wholly owned by C. J. Seimoneit. These assets were incumbered with debts which were assumed by the Delaware corporation, so that the corporation was in debt from the time it began doing business. C. J. Siemoneit was the president and a director of the corporation, the parties stipulating that he was "its managing officer."

From the beginning, C. J. Siemoneit drew freely on the corporation for his own personal expenses. He maintained no personal bank account, but caused checks to be issue on the company's bank accounts for his individual purposes. An account was kept on the books of the company in his name, in which he was credited with the amount of his agreed salary and sums expended for the benefit of the company, and charged with his withdrawals. It was stipulated that "the other stockholders consented to all withdrawals by C. J. Siemoneit."

On May 24, 1941, C. J. Siemoneit purchased for his homestead a tract of land in River Crest in Tarrant County for a total consideration of $17,500.00, of which $5,000.00 was paid in cash and $12,500.00 was evidenced by a vendor's lien note. The cash payment was made with a corporation check, but at that time the corporation owed C. J. Siemoneit more than the amount of the check, and no objection is made to this payment. The last day on which the company's books showed a balance in in favor of C. J. Siemoneit was July 31, 1941. Thereafter the amount he owed the company fluctuated, but generally there was a rise in the indebtedness until on December 1, 1944, he executed and delivered his note payable to the corporation for $38,610.63, which approximately represented the balance then owing. In the meantime, from September, 1941, to November, 1944, and while he was indebted to the corporation, he caused checks to be issued on the corporation's bank accounts in payment for purchase money, loan expenses, improvements, taxes and insurance on the River Crest property in the total amount

of $14,263.87. During the same period Siemoneit caused company checks to be issued to pay for a piano and a silver service. In 1946 the River Crest property was sold, and the proceeds were used by C. J. Siemoneit to purchase other real property. The trustee in bankruptcy seeks to impose a constructive trust on this property and also on the personality paid for with company checks.

At the time the payments were made for the benefit of the River Crest property, the corporation was solvent. Not counting the claim of the corporation against C. J. Siemoneit for money advanced to him, the corporation still had assets valued at more than the amount of its debts. There was no attempt to conceal from any creditor the nature and extent of Siemoneit's loans from the corporation. His indebtedness to the corporation was disclosed on statements furnished to the principal creditors, and they made no objection. In 1942 and 1943 Siemoneit borrowed from other sources and paid to the corporation amounts in excess of the total corporate funds which had been spent for the benefit of the River Crest property. Siemoneit testified that his agreement with E. R. Land, the company's bookkeeper, was that all of these payments should be credited against the advances made by the corporation with respect to the homestead. However, there remained at all times after July, 1941, a balance owing by Siemoneit to the company, which at the time the petition for reorganization was filed on March 2, 1945, amounted to $30,510.63. This balance has never been paid.

During the years that it operated from 1941 to 1945, the corporation operated at a loss for each year except 1942, when it made a small profit. It declared no dividends. While the company was not insolvent, it was in financial difficulties almost from the first, and in November, 1942, it began depositing its money in special accounts in the name of E. R. Land to avoid garnishment of its funds by creditors. C. J. Siemoneit testified that the corporation's insolvency was precipitated by the blowout of a well it was drilling, which caused it a loss in excess of $100,000.00, and that the advancements to him on account of his homestead had nothing to do with the filing of the petition for reorganization.

■ The first question for determination is whether C. J. Siemoneit was guilty of a breach of fiduciary duty under these facts. Undoubtedly, as a director and the managing officer of

the corporation, Siemoneit occupied the position of a fiduciary toward the company. Tenison v. Patton, 95 Texas 284, 67 S. W. 92; 3 Hildebrand, Texas Corporations (1942) Secs. 681, 692; 3 Fletcher, Cyclopedia of the Law of Private Corporations, (1947), Secs. 838, 850; Ballantine, Corporations (1946) Sec. 66. Nevertheless, the text cited point out that officers and directors of corporations are not strictly trustees, and that their duties and liabilities are not necessarily identical with those of other fiduciaries. The character and consequences of the acts of an officer or a director have apparently been determined on the basis of the facts of each case. Acts which might well be considered breaches of trust as to other fiduciaries have not always been so regarded in cases of corporate officers or directors.

■ We therefore have to consider the nature of the acts which C. J. Siemoneit did in this particular case. With the consent of all of the stockholders, and without concealment from the creditors, he borrowed money from the company, while it was a solvent and going concern. What he attempted to do was to create between himself and the company the relation of debtor and creditor. The authorities seem to agree that, in the absence of fraud or statutory prohibition, an officer or director may borrow money from the corporation without being guilty of a breach of trust. Felsenheld v. Bloch Bros. Tobacco Co., 119 W. Va. 167, 192 S. E. 545, 123 A. L. R. 334; Klein v. Independent Brewing Association, 231 Ill. 594, 83 N. E. 434; Garrison Canning Co. v. Stanley, 133 Ia. 57, 110 N. W. 171; Barber v. Kolowich, 282 Mich. 143 ,275 N. W. 797; Platt v. Birmingham Axle Co., 41 Conn. 255; Witters v. Sawles, 31 Fed. 1; 19 C. J. S. 134, "Corporations", Sec. 771; 3 Fletcher, Cyclopedia of the Law of Private Corporations (1947), Sec. 955. There is no claim of actual fraud in this case and no statute prohibits a loan of this kind. No Texas case precisely in point has been discovered, but in Marosis v. Alamo Amusement Co., 60 S. W. (2d) 876, (Tex. Civ. App., affirmed in the Supreme Court by agreement of the parties) it was stated that an officer who uses corporate funds for his own purposes in good faith and without fraud does not become a constructive trustee of the property he purchased with those funds.

The trustee in bankruptcy is correct in saying that cases in which recovery is sought against the payee of the company's checks, such as Hall v. Crawford & Delphenis, 11 S. W. (2d) 804 (Tex. Civ. App., writ of error dismissed) and Sweet v. Lang, 14 Fed. (2d) (C. C. A. 8th) present a different question

from that in the present case where relief is asked against the officer himself. However, in our opinion the trustee in bankruptcy has cited no authority which would sustain us in imposing a constructive trust in this case. In Sparks v. McCraw, 112 S. C. 519, 100 S. E. 161, cited by the trustee, it appears that the officer using corporate funds was guilty of affirmative misrepresentations of fact to the creditors. No similar situation exists here. It also appears that there was fraud and concealment from creditors in Boyle v. Lewiston Trust Co., 126 Maine 74, 136 Atl. 292. Whitfield v. Kern, 120 N. J. Eq. 115, 184 Atl. 333, announced general rules of law favorable to the trustee, but the decision was reversed in 122 N. J. Eq. 332, 192 Atl. 48, and the result reached on appeal supports the conclusion that no breach of trust is involved here.

■ From the authorities we have discussed we are of the opinion C. J. Siemoneit was guilty of no breach of fiduciary duty when he borrowed money from the company. Of course he must repay the company what he borrowed, but in this respect the relation between him and the company is the ordinary relation between debtor and creditor. No constructive trust or equitable lien therefore can be imposed on the property which he purchased with the borrowed money. In view of this holding, it is unnecessary to discuss the question of the application of the payment made by C. J. Siemoneit to the corporation. We affirm the conclusion reached by both of the lower courts in so far as the claims of the trustee in bankruptcy are concerned.

■ The application for writ of error filed by the United States presents the question of the liability of C. J. Siemoneit for a civil penalty in the amount of Federal taxes due to the Government from the corporation. It is admitted that the taxes were due from the corporation and that C. J. Siemoneit was the disbursing officer of the corporation who decided that the taxes would not be paid when they were due. The trial court found the facts to be that C. J. Siemoneit, in failing to cause the corporation to pay the taxes, had no fraudulent motive or intent or purpose to defraud the Government of its revenue, but that he "deliberately and intentionally" failed to cause payment of the taxes when they were due. The court further found as follows:

"At all times after April, 1943, Siemoneit Drilling Company, Inc. was embarrassed financially. Its operations in the interval of April, 1943, to the filing of its petition for reorganization, March 2, 1945, required that it borrow money and liquidate

capital assets continually. The executive officers of the corporation, C. J. Siemoneit and E. R. Land, deemed it prudent to delay payment of Federal taxes after the same were due, for each quarter of the period for which such taxes were assessed, in order to conserve funds for operations. If the operations had been successful, the corporation would have recovered from its embarrassment and would have paid the taxes owing the Government."

The tax statutes involved are Sections 1400-1432 and 1621-1627 of the Internal Revenue Code (26 U.S.C.A.) relating to Social Security and Withholding taxes. Under Section 1430 and 1627 the same penalties are provided with respect to these taxes as are prescribed for taxes imposed by Section 2700 of the Internal Revenue Code (26 U.S.C.A.). These penalties are set out in Section 2707 of the Internal Revenue Code (26 U.S. C.A.), which reads as follows:

"Sec. 2707. Penalties:

"(a) Any person who willfully fails to pay, collect or truthfully account for and pay over the tax imposed by Section 2700(a), or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provide by law, be liable to a penalty of the amount of the tax evaded, or not paid, collected, or accounted for and paid over, to be assessed and collectd in the same manner as taxes are assessed and collected. No penalty shall be assessed under this subsection for any offense for which a penpenalty may be assessed under authority of section 3612.

"(b) Any person required under this subchapter to pay any tax, or required by law or regulations made under authority thereof to make a return, keep any records, or supply any infor--mation for the purposes of the computation, assessment, or collection of any tax imposed by this subchapter who willfully fails to pay such tax, make such returns, keep such records, or supply such information, at the time or times required by law or regulations, shall, in addition to other penalties provided by law, be guilty of a misdemeanor and, upon conviction thereof, be fined not more than $10,000.00, or imprisonment for not more than one year, or both, together with the costs of prosecution.

"(c) Any person required under this subchapter to collect, account for and pay over any tax imposed by this subchapter, who willfully fails to collect or truthfully account for and pay

over such tax, and any person who willfully attempts in any manner to evade or defeat any tax imposed by this subchapter or the payment thereof, shall, in addition to other penalties provided by law, be guilty of a felony and, upon conviction thereof, be fined not more than $10,000.00, or imprisoned for not more than five years, or both together with the costs of prosecution.

"(d) The term 'person' as used in this section included an officer or employee of a corporation, or a member or employee of a partnership, who as such officer, employee, or member is a duty to perform the act in respect of which the violation occurs. 53 Stat. 290."

The conclusions of law of the trial court as to the liability of C. J. Siemoneit were as follows:

"I. Liability to the civil penalty authorized by Section 2707(a), 26 U. S. C. A. does not depend upon the same criminal intent as required for conviction under Section 2707(b) or (c), but arises when there is a deliberate, intentional failure to pay taxes when due.

"II. C. J. Siemoneit is therefore liable to the government for penalties assessed by the Commissioner of Internal Revenue."

The Court of Civil Appeals reversed the judgment of the trial court on this part of the case, holding that the findings of fact made by the trial judge did not establish C. J. Siemoneit's liability for the penalties sought to be imposed upon him.

The question before us is the interpretation of "willful" as used in Section 2707(a). In determining the meaning of Federal laws, this Court is controlled by the decisions of the Supreme Court of the United States. Emmons v. Pacific Indemnity Co., 146 Texas 496, 208 S. W. (2d) 884; State v. Wynne, 134 Texas 455, 133 S. W. (2d) 951; Southwestern Greyhound Lines v. Railroad Commission, 128 Texas 560, 99 S. W. (2d) 263, 109 A. L. R. 1235. In this instance, however, there does not appear to be any decision by the United States Supreme Court which is directly in point, and we have to try to arrive at the meaning of the statute from that Court's opinions in more or less analogous cases.

It seems to be settled that in the internal revenue statutes imposing criminal penalties, willfulness includes "some element of evil motive and want of justification in view of all the finan-

cial circumstances of the taxpayer". See Spies v. United States, 317 U. S. 492, 498, 63 Sup. Ct. 364, 87 L. Ed. 418. This holding, that the word "willfully" means "an act done with a bad purpose" and that "an evil motive is a constituent element of the crime", is regarded as being in harmony with the interpretation usually given to "willful" in other statutes imposing criminal penalties. See United States v. Murdock, 290 U. S. 389, 394, 395. 54 Sup. Ct. 223, 78 L. Ed. 381. However, it is recognized that "willful . . . is a word of many meanings, its construction often being influenced by its context". See Spies v. United States, 317 U. S. 492, 497. And one of the meanings which it may have is "an act which is intentional, or knowing, or voluntary, as distinguished from accidental". See United States v. Murdock, 290 U. S. 389, 394; Screws v. United States, 325 U. S. 91, 101.

Felton v. United States, 96 U. S. 699, has been cited by respondent as controlling in his favor. In that case, the United States sued to recover a civil penalty of $1,000.00 under an internal revenue statute imposing such a penalty for "knowingly and willfully" failing to equip a distillery with apparatus of an adequate capacity. The trial court refused to instruct the jury that the defendants would not be subject to the penalty if the inadequacy of the apparatus was unknown to the defendants and their superintendent, and judgment was entered against the defendants for the penalty. This judgment was reversed by the Supreme Court. After reviewing the evidence, the court says: (96 U. S. at p. 702):

"There was, therefore, the absence of that knowledge which could render the neglect willful, and therefore actionable. They must have 'knowingly and willfully' omitted to furnish a receiver of sufficient capacity, before the severe penalty prescribed could be imposed upon them and their distilled spirits subjected to forfeiture. Doing or omitting to do a thing knowingly and willfully, implies not only a knowledge of the thing, but a determination with a bad intent to do it, or to omit doing it. 'The word "willfully" ', says Chief Justice Shaw, 'in the ordinary sense in which it is used in statutes, means not merely "voluntarily", but with a bad purpose.' Com. v. Kneeland, 20 Pick., 220. 'It is frequently understood', says Bishop, 'as signifying an evil intent without justifiable excuse.' Cr. L. Vol. I, sec. 428."

It seems apparent from a study of the opinion in the Felton case that it could have been disposed of on the ground that the

evidence failed to show that the defendants had knowingly or intentionally failed to comply with the law. It was unnecessary for the court to hold that the word "willful" requires the showing of "a determination with a bad intent" or "with a bad purpose" not to do the required act, since the evidence showed that the defendants' failure was unknowing and unintentional. We do not think that the Felton case can be regarded as settling the law in a case such as the one before us, where the trial court has expressly found that there was "a deliberate, intentional failure to pay taxes when due". So far as we can discover, the Felton case has not been cited subsequently by the Supreme Court of the United States as stating the correct rule in suits for civil penalties, but rather as stating the rule which is to be applied where criminal penalties are sought. See Screws v. United States, 325 U. S. 91, 101; United States v. Murdock, 290 U. S. 389, 394; Spurr v. United States, 174 U. S. 728, 734; Potter v. United States, 155 U. S. 438, 446.

Section 2707 (a) provides that the penalty imposed therein shall be "assessed and collected in the same manner as taxes are assessed and collected". Thus it is clear that the statute intended a civil, not a criminal, sanction. The imposition of civil as well as criminal sanctions for the same act or omission is permissible; and one sanction which has long been recognized as civil rather than criminal, in spite of its possible severity, is the payment of fixed or variable sums of money. See Helvering v. Mitchell, 303 U. S. 391, 399-400. Even in a case where the penalty was double the value of goods illegally imported, it was considered that the statute was remedial, as providing indemnity for loss of the Government resulting from expense incident to the enforcement of tax obligations. Stockwell v. United States, 13 Wall. 531.

In United States v. Illinois Central Railroad Company, 303 U. S. 239, suit was brought to recover a civil penalty for violation of a Federal statute requiring the periodical unloading of livestock in transit. The Supreme Court there rejected the argument that "willful" included an evil motive or bad purpose and approved its definition as the attitude of a person "who, having a free will or choice, either intentionally disregards the statute or is plainly indifferent to its requirements." See 303 U .S. at p. 243.

In Allen v. Regents of the University System of Georgia, 304 U. S. 439, the Court held that the regents were liable for

admission taxes which the Federal statute required to be collected on admissions charged to athletic contests. In its opinion the Court says, ". . . here the assessment is not of a tax payable by respondent but of a penalty for failure to collect it from another". The Court does not discuss the meaning of "willful" as used in the statute involved in that case, but since there was no showing of any evil intent or bad purpose on the part of the regents, the inference which we think must be drawn from the Court's decision is that voluntary and intentional failure to comply with the statute was sufficient to create liability for the penalty.

Respondent in this case argues that "willful" must be given the same meaning in all subdivisions of Section 2707, and therefore that the same evil or fraudulent purpose must be shown in a civil suit brought under subsection (a) as in a criminal prosecution under subsections (b) and (c). The presumption ordinarily is that a term is used throughout the same statute in the same sense. See Pampanga Sugar Mills v. Trinidad, 279 U. S. 211, 218. However, the meaning of "willful" in the different sections of the statute must be considered in the different contexts in which the word is found in the separate sections. We do not believe that the Congress intended to require no more proof of the Government in a case where criminal punishment is sought than where civil recovery is the subject of the suit, as in this case. It has been recognized that differences in the nature of the penalties imposed may properly lead to differences in construction of the word "willful", even when used in different sections of the same statute. See Spies v. United States, 317 U. S. 492, 497.

In the light of the decisions of the Supreme Court of the United States, and even though we agree that penalty statutes should generally be construed in favor of the taxpayers, we have concluded that the district court's finding that the respondent intentionally and deliberately failed to pay the taxes when due was sufficient to make him liable for the civil penalty under Section 2707(a). Respondent admittedly knew that the taxes were due. There was no contention that the statute was inapplicable to the taxpayer, as in cases cited by respondent, such as One 1941 Buick Sedan v. United States, 158 Fed. (2d) 445 (C. C. A. 10th) or Carson Naval Stores Co. v. United States, 29 Fed. Supp. 818 (D. C., Ga.). Nor does the proof show that the corporation could not have paid the taxes when they were due. The proof merely shows that it was inconvenient for the cor-

poration to pay the taxes at that time and that it was thought that the corporation would have a better chance to operate profitably if it postponed the payment of its tax obligation and used the funds for its own purposes instead of paying them over to the Government as the law requires. The choice was knowing, deliberate and intentional, and with full realization that the law was being violated. In our opinion this is the kind of case which Section 2707(a) was intended to cover. The respondent cannot be excused or justified because he hoped or even reasonably expected that the corporation would at a later date be in a better financial condition so that the payments could be made with less embarrassment. The purpose of the statute, to insure the prompt payment of taxes when due, would obviously be defeated by such an interpretation. The district court correctly held that C. J. Siemoneit was liable for the penalties.

We also overrule the respondent's contention that the district court improperly allowed a recovery of interest. Section 2707(a) provides that the penalty shall be assessed and collected in the same manner as taxes are assessed and collected, and the statute provides for the collection of interest on taxes from the date of notice. 26 U. S. C. A. (Internal Revenue Code) Sec. 3655(b).

The district court decreed a foreclosure of the Government's lien as against both C. J. Siemoneit and his wife, Lelia Mae Siemoneit, on real property which the defendants admittedly bought and occupy as their homestead. This judgment was entered in spite of the district court's finding that Lelia Mae Siemoneit was not a disbursing officer of the corporation and therefore was not liable for the penalty. Upon appeal the Government has abandoned its claim for personal judgment against Lelia Mae Siemoneit, but asserts that it has a lien against the homestead as a whole. The Court of Civil Appeals did not pass on this point, since it held that even C. J. Siemoneit was not liable for any penalty. Since we have reached a contrary conclusion as to C. J. Siemoneit's liability, we must decide whether the Government's lien extends to and can be foreclosed against the interest of Lelia Mae Siemoneit as well as the interest of her husband.

The lien imposed to secure the payment of general taxes extends to "all property and rights to property, whether real or personal, belonging to" the person liable therefor. Even the homestead of C. J. Siemoneit therefore is subject to the lien. Shambaugh v. Scofield, 132 F. (2d) 345; Staley v. Vaughn, 50 S. W. (2d) 907 (Tex. Civ. App., writ of ereror refused). How-

ever, the question remains whether the lien also extends to the interest of Lelia Mae Siemoneit in the property. The statute by its terms applies only to the property belonging to the person who is liable for the tax or, in this case, the penalty, and the cases hold that a lien to secure payment of taxes owing by a husband does not attach to his wife's property. Sheridan v. Allen, 153 Fed. 568 (C. C. A. 8th; Cannon v. Nichols, 80 F. (2d) 934 (C. C. A. 10th) ; Adler v. Nichols, 166 F. (2d) 674 (C. C. A. 10th). In Texas, we have held that the homestead is to be regarded as an estate created not only for the protection of the family as a whole, but for the units of the family. Woods v. Alvarado State Bank, 118 Texas 586, 19 S. W. (2d) 35. The wife has a vested estate in the land of which she cannot be divested during her life except by abandonment or a voluntary conveyance in the manner prescribed by law. As applied to the situation in Oklahoma, where it is recognized that the wife has a vested interest in the homestead, it has been held that the wife's interest cannot be subjected to levy and sale for the satisfaction of the Federal tax liability of her husband. Jones v. Kemp, 144 F. (2d) 478 (C. C. A. 10th). We think that this conclusion is sound and that the district court erred in decreeing a foreclosure of the lien on the homestead as against Mrs. Siemoneit.

With respect to the suit by the trustee in bankruptcy, the judgments of the district court and the Court of Civil Appeals are affirmed. With respect to the intervention of the United States, the judgment of the Court of Civil Appeals is reversed, the judgment of the district court is reformed so as to eliminate a foreclosure of the government's lien as against Lelia Mae Siemoneit in the real estate therein described, and as so reformed the judgment of the district court is affirmed.

Opinion delivered March 2, 1949.

Rehearing overruled March 30, 1949.