372

MONDAY, Plaintiff and Appellant (P. C. Monday Tea Company, Original Plaintiff), v. MILWAUKEE COUNTY EXPRESSWAY COMMISSION, Defendant: UNITED STATES OF AMERICA, Intervenor and Respondent.

*December 1, 1965—January 4, 1966.*

For the appellant there were briefs by *Martin J. Torphy* and *E. Campion Kersten,* both of Milwaukee, and oral argument by *Mr. Kersten.*

For the respondent there was a brief by *James B. Brennan,* United States attorney, *Robert J. Lerner,* assistant United States attorney, and *Stanton Sornsen,* Internal Revenue Service, and oral argument by *Mr. Lerner.*

FAIRCHILD, J.   On this appeal, we are concerned with only one of the claims of the United States to the fund under the control of the circuit court. The claim of lien here involved is grounded upon the alleged individual liability of Mr. Monday to the United States. The existence of such liability is attacked in Mr. Monday's counterclaim, and jurisdiction to determine such liability is challenged by the demurrer.

The complaint of the United States as an intervening party, and Mr. Monday's answer thereto, relate to the claim by the United States of a lien grounded upon the tax liability of the corporation, but any issues posed by the complaint and answer are not before us now.

The United States does not appear to challenge the jurisdiction of the circuit court to determine Mr. Monday's individual liability on the ground that the United States is immune from suit without its consent. Whether the request of the United States that it be made a party in order to assert its claim grounded on liability of the corporation is sufficient consent to the adjudication by the circuit court of its claim grounded on Monday's individual liability,[2] or whether the service

---

[2] The two claims are related. The counterclaim discloses that the assessment against Mr. Monday was made on the premise that he was a person required to collect, account for, and pay over the

upon the clerk of the notice of levy, expressly referring to this action, standing alone, would be a consent to such adjudication, need not be decided. There appears to be no claim that the United States attorney exceeded his lawful authority in entering into the stipulation with reference to the disposition of the fund, and we deem that such stipulation, within his authority, is consent that the court determine the matter if and insofar as it has jurisdiction of the subject matter.

The question presented, as we see it, is whether a state court which has under its control a fund upon which the United States claims a lien for assessed and unpaid taxes, and against which the United States seeks to enforce its lien, has jurisdiction to go behind the assessment and determine the existence or amount of the taxpayer's liability. It should be noted that none of Mr. Monday's allegations in paragraph 5 of his counterclaim challenges the fact of the making of the assessment, nor alleges any defect in procedure thereafter, nor is there any issue of priority over any other claimant. All the allegations challenge the merits of the grounds for the assessment, *i. e.*, whether Mr. Monday is really liable to the United States. In order to consider these objections, the circuit court must have jurisdiction to determine liability notwithstanding the determination made by the federal officer who entered the assessment.

We find no federal statute which confers such jurisdiction upon a state court, nor any court decisions which persuade us that such jurisdiction exists. To the contrary, we conclude, by reason of the considerations applicable to tax collection, and the general policy adopted by Congress, that such jurisdiction does not exist.

The United States acquires a lien where a person "liable to pay any tax neglects or refuses to pay the same

---

tax of the corporation and wilfully failed to do so. 26 USCA, sec. 6672. Such penalty is to be assessed and collected in the same manner as a tax. 26 USCA, sec. 6671.

after demand, . . ." [3] The lien arises at the time the assessment is made.[4] The assessment, though made *ex parte,* is an administrative act of an officer of the United States. It is made by recording the liability of the taxpayer in the office of the secretary of the treasury or his delegate.[5] It is at least presumptively correct and is conclusive for the purpose of some types of proceedings.[6] The question is whether it is conclusive in the action before us.

The broad, general policy with respect to the collection of disputed federal taxes has been succinctly summarized as "pay first and litigate later." [7]

As stated, generally, in *Bull v. United States:* [8]

"Thus the usual procedure for the recovery of debts is reversed in the field of taxation. Payment precedes defense, and the burden of proof, normally on the claimant, is shifted to the taxpayer. The assessment supersedes the pleading, proof and judgment necessary in an action at law, and has the force of such a judgment. The ordinary defendant stands in judgment only after a hearing. The taxpayer often is afforded his hearing after judgment and after payment, and his only redress for unjust administrative action is the right to claim restitution."

Congress has expressed and implemented such policy. A federal statute prohibits the maintenance in any court of a suit to restrain the assessment or collection of any tax,[9] although the courts have allowed such suits in certain exceptional circumstances.[10]

---

[3] 26 USCA, sec. 6321.

[4] 26 USCA, sec. 6322.

[5] 26 USCA, sec. 6203.

[6] *United States v. O'Connor* (2d Cir. 1961), 291 Fed. (2d) 520, 527.

[7] *Flora v. United States* (1960), 362 U. S. 145, 159, 164, 80 Sup. Ct. 630, 4 L. Ed. (2d) 623.

[8] (1935), 295 U. S. 247, 260, 55 Sup. Ct. 695, 79 L. Ed. 1421.

[9] 26 USCA, sec. 7421.

[10] See *Miller v. Standard Nut Margarine Co.* (1932), 284 U. S. 498, 52 Sup. Ct. 260, 76 L. Ed. 422; *Enochs v. Williams Packing Co.* (1962), 370 U. S. 1, 82 Sup. Ct. 1125, 8 L. Ed. (2d) 292.

A tax may be collected by seizure and sale of all property and rights to property belonging to the taxpayer or subject to the lien provided by sec. 6321.[11] For this purpose the assessment is conclusive.[12]

After claim for refund, an action may be brought in a district court or the court of claims for the recovery of a tax alleged to have been erroneously or illegally assessed or collected.[13]

In 1935, Congress showed its preference for "pay first and litigate later" by amending the Federal Declaratory Judgment Act so as to except disputes with respect to federal taxes.[14]

28 USCA, sec. 2410, authorizes the naming of the United States as a party in any quiet-title or foreclosure action in a state or federal court where the United States claims a mortgage or other lien on the property involved. The federal court of appeals for the second circuit has decided, with reasoning which we find persuasive, that this statute does not confer jurisdiction to go behind an assessment of tax and adjudicate the liability of the taxpayer.[15]

A decision in the ninth circuit, relied on by Mr. Monday[16] decided in an action under sec. 2410 that there were procedural defects in a federal tax lien, but noted that it did not decide whether it could consider the merits of the assessment.[17]

---

[11] 26 USCA, sec. 6331.

[12] *Bull v. United States, supra,* page 260, footnote 8; *Bowers v. American Surety Co.* (2d Cir. 1929), 30 Fed. (2d) 244.

[13] 26 USCA, sec. 7422, 28 USCA, sec. 1346.

[14] *Flora v. United States, supra,* page 164, footnote 7.

[15] *Falik v. United States* (2d Cir. 1965), 343 Fed. (2d) 38. Although one basis for the same holding in an earlier case in the same court, *Pipola v. Chicco* (2d Cir. 1960), 274 Fed. (2d) 909, was disavowed by that court in *United States v. O'Connor, supra,* footnote 6, the court again reached the same conclusion in *Falik* as in *Pipola.*

[16] *United States v. Coson* (9th Cir. 1961), 286 Fed. (2d) 453.

[17] Ibid. at 463, 464. It was specifically pointed out in *Cooper Agency, Inc., v. McLeod* (D. C. S. C. 1964), 235 Fed. Supp. 276, 285, that *Coson* was decided "from a procedural standpoint only."

Thus in the normal course of events, except where resort to the tax court is permitted, payment must be made in full before the taxpayer can litigate the question of liability for the tax.

There are several exceptions to the broad rule requiring payment before litigation. One is the express authorization to resort to the tax court where certain types of taxes are involved.

Another exception occurs where the United States brings an action at law to recover judgment for the amount of the tax. In such an action the assessment is not conclusive, but presumptive only. Recognition of this exception began many years ago in *Clinkenbeard v. United States* [18] and *United States v. Rindskopf*.[19]

A further exception has been found by the court of appeals for the second circuit. In *United States v. O'Connor* [20] the United States brought an action in a federal district court, under the authority of 26 USCA, sec. 7403, seeking enforcement of its lien. The court concluded that the court could adjudicate the issue of liability in such action, saying, "We think the closer analogy is to the action at law on the assessment; when the Government seeks the aid of the courts in enforcing the assessment in any form, it opens the assessment to judicial scrutiny in all respects." [21] Although the language quoted is not restricted to an action in a federal court, we emphasize that the particular action was one in federal court brought there pursuant to a statute.

If Monday's counterclaim be treated as if it were the complaint in an action to quiet title to the fund, we would nevertheless find persuasive the reasoning in *Falik* that congressional policy requires that the assessment be taken as conclusive in such an action.

It seems somewhat more realistic, however, to view the government's service of its notice of levy upon the

[18] (1874), 88 U. S. (21 Wall.) 65, 22 L. Ed. 477.
[19] (1881), 105 U. S. 418, 26 L. Ed. 1131.
[20] *Supra*, footnote 6.
[21] Ibid. page 527.

clerk, with its express reference to this action, as a demand that the circuit court recognize its lien upon Mr. Monday's cause of action against the county and require payment to the United States accordingly. If the notice be so viewed, the counterclaim becomes a defensive pleading in effect though not in form. So viewed we reach the question whether the enactments and doctrines which make up the federal scheme of tax collection impliedly exclude state courts from jurisdiction to set aside assessments of federal taxes made by federal officers. We conclude that even if the *O'Connor* decision is sound [22] when applied to an action in a federal court pursuant to the authority of a federal statute, there is nevertheless an implied exclusion of state court jurisdiction to examine the merits of an assessment, at least in the type of situation now before us, where the United States is demanding payment out of a fund in the control of the state court.

We read such implication from the existence of the general rule—pay first, litigate later, and the anomaly of according to a state court the power to review the administrative decisions of a federal officer. We also see an anomaly in a state court's deciding the issue of an individual's liability to the United States under the tax laws of the latter.[23] Although state courts are bound by the laws of the United States as part of the supreme law of the land, our duty to give full recognition to such laws does not compel the conclusion that Congress intended state courts to have jurisdiction to determine disputes over liability for federal taxes.

Congressional policy appears to favor adjudication of such disputes in federal courts after payment of the tax assessed. We conclude, therefore, that the state courts are not to adjudicate them, at least in the situation

[22] See Note, Merits of a Tax Assessment, 71 Yale Law Journal (1962), 1329, 1335, criticizing *O'Connor* as contrary to the policy of summary tax collection.

[23] See Restatement, Conflicts, p. 728, sec. 610.

present here. We confess to some uneasiness in reaching this proposition because it is in accord with a contention appearing in the brief submitted on behalf of the United States, but expressly withdrawn by the United States attorney upon oral argument. Nevertheless it seems the sounder view.

We should, indeed, acknowledge that Mr. Monday has cited a case in which a state court decided a dispute over liability of the taxpayer to the United States.[24] There the United States had intervened in a state court action. It sought a personal judgment for the penalty, as well as for foreclosure of its lien. The court did not discuss the propriety of its examination of the liability issue.

Other state court cases cited by Mr. Monday do not adjudicate the merits of a dispute over tax liability, but determine the relative priority of the claims of the United States and others.[25]

*By the Court.*—Order affirmed.

HALLOWS, J. (*dissenting*). I think *United States v. O'Connor* (2d Cir. 1961), 291 Fed. (2d) 520, applies to a suit or application to enforce a lien in a state court as it does to a federal court. I can find no implied exclusion of a state court's jurisdiction, as the majority does, nor do I see any anomaly in according this power to a state court to decide this issue. The United States sought this result when it applied to the state court for the enforcement of its lien against money not in the hands of a litigant but in the custody of the state court.

[24] *Paddock v. Siemoneit* (1949), 147 Tex. 571, 218 S. W. (2d) 428.

[25] *New York v. Gilmore's Steak House* (1958), 15 Misc. (2d) 730, 183 N. Y. Supp. (2d) 110; *Ryan Ready Mixed Concrete Corp. v. Tallini Construction Corp.* (1959), 23 Misc. (2d) 547, 194 N. Y. Supp. (2d) 330, and *Oxford Distributing Co. v. Famous Robert's, Inc.* (1958), 5 App. Div. (2d) 507, 173 N. Y. Supp. (2d) 468. While *In re Estate of Dwyer* (1959), 168 Cal. App. (2d) 264, 335 Pac. (2d) 718, is not a priority case, it is not a redetermination of an assessed tax liability.