Nash J. DOWDLE, Appellant,

v.

TEXAS AMERICAN OIL CORPORATION,
Appellee.

No. 6319.

Court of Civil Appeals of Texas,
El Paso.

Dec. 12, 1973.

Stubbeman, McRae, Sealy, Laughlin & Browder, W. B. Browder, Jr., Rodney W. Satterwhite, Midland, for appellant.

Legg, Saxe & Baskin, Reagan H. Legg, Midland, for appellee.

## OPINION

WARD, Justice.

This suit was filed by the corporate Appellee, Texas American Oil Corporation, for the balance due on a promissory note in the amount of $8,663.32 executed to it by its former president, Nash J. Dowdle. Our appellate controversy concerns the cross-action filed by Mr. Dowdle against the corporation asserting a recovery of severance pay of $5,000.00 and three weeks' accrued vacation pay of $3,750.00. After a jury trial, judgment was entered for the Texas American Oil Corporation against the former president for $8,808.99 on the note and all recovery to Dowdle on

his cross-action was denied. On his appeal, Mr. Dowdle challenges the unfavorable jury findings which were to the effect that the Board of Directors of the corporation had not entered into any agreement with Dowdle that he should be paid severance or vacation pay. In addition he complains of the trial Court disregarding jury findings favorable to him that there was a corporate "policy" of paying the claimed severance and accrued vacation pay. We affirm the judgment of the trial Court.

This appeal regards the cross-action filed by the Appellant Dowdle against Texas American Oil Corporation as all important because he must here prevail either in whole or in part by such an offset before he can destroy or reduce the judgment obtained against him on the unpaid note. The cross-petition filed by Mr. Dowdle alleged that he quit his employment with the corporation in October, 1969, and that he was then entitled to receive and be paid one month's severance pay of $5,000.00 and three weeks' accrued vacation time and pay of $3,750.00. The evidence produced by Mr. Dowdle and his witnesses was that there existed a policy of the managing officers, the executive committee, and the Board of Directors of the corporation to pay these amounts upon the resignation of an officer or employee of the Appellee. As to this claim, the Appellee alleged that it had no obligation, duty or responsibility for any such payment as it never made any agreement to make any such payment and that if any rule or policy was in existence it was one made by Dowdle for his own benefit and thus contrary to law.

By their answers to the pertinent issues, the jury accepted the respective contentions of both parties.

In Special Issue No. 3, the jury found from a preponderance of the evidence that the Board of Directors of Texas American Oil Corporation had not entered into any agreement with Mr. Dowdle providing that he should be paid severance pay upon his resignation; and in Special Issue No. 4,

the jury found from a preponderance of the evidence that the Board of Directors of Texas American Oil Corporation had not entered into any agreement with Mr. Dowdle providing that he should be paid any "vacation pay" upon his resignation.

On the other hand in Special Issue No. 5, the jury found from a preponderance of the evidence that at the time the employment of Mr. Dowdle with Texas American Oil Corporation was terminated, that the said company had adopted a policy of making payment to such officer or employee of severance pay; and that by Special Issue No. 6, one month's salary was payable to Mr. Dowdle as severance pay under that policy. By Special Issue No. 7, the jury found from a preponderance of the evidence that at the time the employment of Mr. Dowdle with Texas American Oil Corporation was terminated, that the company had adopted a policy of making payment to such officer or employee for accrued vacation time; and by Special Issue No. 8, three weeks' pay was payable to Mr. Dowdle as vacation pay under that policy.

Appellant has seven points. They present to us the usual task of deciding if the answers to Issues 3 and 4 are supported by evidence which is legally sufficient. However, they are primarily concerned with questions of whether or not Issues 3 and 4 are controlling as opposed to Issues 5, 6, 7 and 8, and if a conflict exists between the two sets of answers. We hold that the answers to Issues 3 and 4 are supported by legally sufficient evidence; that Issues 3 and 4 are the controlling and ultimate issues; that Issues 5, 6, 7 and 8 at best relate only to evidentiary matters and that no conflict exists between the two sets of findings.

While a decision regarding the compensation due the Appellant from the corporation necessarily involves an examination of the corporate structure and the powers or authority granted to the directors, executive committee and officers, we find neither charter nor bylaws before us and only

few minutes in evidence. However, we do know that the company was organized in 1955 by Mr. Dowdle who then became its president and chief executive officer. The company was in the oil and gas exploration business. At first, it was a very small affair with only three directors and employees and few stockholders. At that time, a salary of $200.00 a month was paid to Dowdle. Undoubtedly due to his efforts, and that of the other employees, the company experienced considerable financial success and growth, and at the time that he resigned from the company in 1969 he was receiving a salary of $60,000.00 a year, payable $5,000.00 a month. From the beginning to the time of his resignation, Mr. Dowdle had always been the president, member of and chairman of the Board of Directors, member of the executive committee and chief executive officer of the company. By 1969, there were outstanding four million shares of capital stock of the company, which were owned by some ten thousand stockholders. At the beginning, Dowdle owned a considerable portion of the capital stock. By 1969, while his percentage of ownership had been reduced to some six percent, he still owned some 220,000 shares. By that time, the number of directors had been increased to seven. Annual stockholders' meetings were held in August of each year at which meetings the directors for the ensuing year were selected. From the beginning, the directors selected three of their number as an executive committee and reference is noted that the bylaws provided that the committee had the power to act for the Board of Directors under any authority granted by the Board. The exact extent of this power and the authority of the committee is not before us, although the committee seemingly had all the authority that could be granted under the applicable statute. Tex. Bus. Corp.Act Ann. art. 2.36 (1956), V.A. T.S. The annual meeting of the Board of Directors followed the yearly election of the directors by the stockholders, and it was at this meeting of the Board that the officers of the company would be appointed and their salaries determined. The corporate structure seems to have fallen within a normal scheme as contemplated by the Texas Business Corporation Act. 19 Texas Practice, Business Organizations, Secs. 421–424 (1973).

On August 27, 1969, following the annual stockholders' meeting for that year, the newly appointed Board of Directors reelected the Appellant as the chairman of the Board and chief executive officer and set his annual compensation at $60,000.00. No mention was made in this meeting or in the minutes of any severance pay or vacation pay. On September 22, 1969, by letter addressed to the Board of Directors, the Appellant resigned as an officer, director and chairman of the Board, effective October 15, 1969. Mr. Dowdle then talked with individual directors prior to the effective date of his resignation and requested that the Board consider a payment to him of some additional amount of money. At a meeting on October 16th, his resignation was accepted and the Board refused his request for any additional payment. The Board was described as being extremely upset with Mr. Dowdle as he was leaving after generating some serious problems resulting from a pending merger; that he was forming a new company and he was moving to new offices in the same building and would be in competition with his old company; and that he had resigned his position within a month after his new appointment. The Board felt that he had no contractual right in his request. Subsequently, on October 26th after a second request, the Board reaffirmed its position by a resolution duly entered in the minutes. On October 15, 1970, he again contacted the Board of Directors when he wrote a letter, wherein he stated:

"For the past several months I have requested severance pay and/or appropriate vacation pay from Texas American Oil Corporation. As you know, for several years I did not take vacations while I was chief executive officer of your company and as yet have not re-

ceived any type severance pay from Texas American Oil.

I believe I am entitled to at least three years of vacation pay or a total vacation or severance pay of 15 weeks. * * * "

When this request was denied, the groundwork for the present controversy was completed.

■ Appellant's points that there was no evidence to support the jury's findings to Issues 3 and 4 will be considered first. There was no statement of any kind found from an examination of the records in either the minutes of the executive committee or in the minutes of the Board of Directors relating to vacation or severance pay from the time of the formation of the corporation until after Mr. Dowdle resigned. Actually, Mr. Dowdle does not contend that there was ever any formal action taken by or any formal agreement ever made with the Board of Directors on these matters. In this sense, these points are overruled.

Appellant asserts that it is in the sense that a "policy" of the chief executive officer or the executive committee or the Board of Directors, never formally adopted, controls the disposition of this case. It was upon this nebulous concept which is referred to repeatedly as a "policy" that reliance is made. Though there is some conflict in the testimony as to the existence of the policy, there is ample testimony by Mr. Dowdle that a definite vacation-severance pay policy was first adopted by him in 1963 and restated in 1967. He asserted that this was done by him individually and also in discussions with members of the executive committee and with members of the Board of Directors. It was not uniformly applied and different circumstances dictated how each case was treated. It is noted that it was Mr. Dowdle's position in his pleadings and on the trial that the policy alone entitled him to payment. For the first time on appeal he argues that it created an implied contract. Regardless, we feel no recovery is permissible.

■ The controlling principles are stated in Wiberg v. Gulf Coast Land & Development Company, 360 S.W.2d 563 (Tex.Civ.App.—Beaumont 1962, writ ref'd n. r. e.) :

"The director of a corporation stands in a fiduciary relationship to his company. He must act fairly and honestly with it and make full disclosure of all pertinent information in relation to the subject matter of any contract he would negotiate with it in which he has a personal interest. Tenison v. Patton, 95 Tex. 284, 67 S.W. 92. And it is improper for a director to vote on a transaction in which he is personally involved. Vol. 3 Hildebrand, Tex.Corps., Sec. 698, p. 61. He is not, however, in the strict sense a trustee. Paddock v. Siemoneit, 147 Tex. 571, 218 S.W.2d 428.

If the contract is made with a director and his vote is necessary to authorize the contract, the contract is unenforceable. Davis v. Nueces Irrigation Co., 103 Tex. 243, 126 S.W. 4; Dunagan v. Bushey, 152 Tex. 630, 263 S.W.2d 148; McLendon Hdwe. Co. v. Black, Tex.Civ. App., 264 S.W. 1011. If in the last instance, however, the contract appears to be one that was fair, just and beneficial to the corporation, and the director personally involved has made a full disclosure, such contract may be ratified by a majority of the stockholders of the company. Pruitt v. Westbrook, Tex.Civ. App., 11 S.W.2d 562; 19 C.J.S. Corporations § 783, pp. 156, 157."

■ While fringe benefits such as job severance payments may be said to serve legitimate business purposes, 19 Texas Practice, Business Organizations, Sec. 359(2), it appears in the facts before us that the Appellant always claimed that the plan was his and that he alone was the moving force in establishing the policy. If it can be said by any reasoning that the severance plans became a part of the contract with the Appellant, his participation seemingly would require stockholder ratifi-

cation insofar as it was applicable to his benefit. That is absent here. When an employment contract is entered into with a director and his vote is necessary to authorize the contract, the transaction has been held to be voidable at the option of the corporation and the contract is not enforceable. Nelms v. A & A Liquor Stores, Inc., 445 S.W.2d 256 (Tex.Civ.App.—Eastland 1969, writ ref'd n. r. e.); A. J. Anderson Co. v. Kinsolving, 262 S.W. 150 (Tex.Civ.App.—San Antonio 1924, writ dism'd). If it can be said that the director can bind the corporation without formal vote of the directors or the executive committee to a fringe benefit plan which he initiates and which he later attempts to take advantage of, then he has effectively circumvented the rules outlined. Such cannot be permitted.

Again, the facts in this case come within the alternative holding in A. J. Anderson Co. v. Kinsolving, supra. There three officers, who also consisted of a majority of the Board of Directors, informally agreed to pay a bonus. This was held to create no right of action in the beneficiaries of the contemplated bounty as it was done without the formal action of a majority of the Board of Directors in session as such.

"As a general rule directors must act as a board in fixing compensation, and it has been said that a formal resolution passed before the services are rendered is necessary, a mere understanding or agreement among themselves being insufficient." Fletcher Cyclopedia Corporations, Vol. 5, p. 570, Ch. 16, Sec. 2131.

Other principles are applicable. The law is well settled that an officer of a corporation cannot recover of the corporation any salary or compensation for services rendered unless such salary or compensation was fixed in some authorized manner before the performance of the services. Shultz v. Resthaven Cemetery, Inc., 375 S.W.2d 493 (Tex.Civ.App.—Houston 1964, writ ref'd n. r. e.). What

the Appellant is attempting to do is contrary to Texas law, in that he urges that a policy last made in 1967 binds the action of the new Board of Directors in 1969. Under either the charter or bylaws, it appears that his election either as president or chief executive officer was limited to one year.

"While long-term contracts of employment may be beneficial to some corporations and desirable as to some employees or officers in other corporations, the Legislature has not taken away the right of the stockholders to protect themselves against such contracts if they so desire. The stockholders have done so in this case." Pioneer Specialties, Inc. v. Nelson, 161 Tex. 244, 339 S.W.2d 199 (1960).

Whatever the executive committees or directors might have done in previous years can be of no significance here. It is uncontroverted that there was no discussion of any kind on August 27, 1969, when Mr. Dowdle was last hired regarding any fringe benefits in case he terminated his employment. He was hired for $60,000.00 and that is plain. The absence of additional provisions from this contract indicate an intention to exclude them, rather than an intention to include them. The maxim "expressio unius est exclusio alterius" applies. 17 Am.Jur.2d, Contracts, Sec. 255, pp. 651, 652. Dowdle accepted this compensation figure for the last year when he accepted his employment and entered upon his duties. This plain statement of compensation effectively excludes any other compensation.

The evidence as to what other officers and employees received when their services were terminated cannot override the specific minutes of the Board of Directors which definitely fixed the Appellant's compensation and of which he was aware. Leon Farms Corp. v. Beeman, 240 S.W.2d 433 (Tex.Civ.App.—El Paso 1951, writ ref'd n. r. e.).

Finally, it can be said that Special Issues 5, 6, 7 and 8 are of no importance as they relate to a "policy" at the time the employment of Appellant was terminated. If any recovery could be based on such issues it would bring about retroactive compensation. Such has been condemned as being without consideration and void in the absence of an express or implied agreement existing before the service was rendered. Hurt v. Cotton States Fertilizer Co., 159 F.2d 52 (5th Cir. 1947) cert. denied 331 U.S. 828, 67 S.Ct. 1351, 91 L.Ed. 1843; 19 C.J.S. Corporations § 804. What "policy" meant here was a unilateral discretionary thing to be applied or not at the option of the governing body as to any retiring officer or employee. This was the way that Mr. Dowdle considered the term when he applied to the company after his resignation, and his interpretation should be respected.

We have considered all of the Appellant's points and they are overruled. The judgment of the trial Court is affirmed.