**C. H. LEAVELL AND COMPANY et al., Appellants,**

v.

**The LEAVELL COMPANY, Appellee.**

No. 6773.

Court of Civil Appeals of Texas, El Paso.

June 21, 1978.

Shank, Irwin, Conant, Williamson & Grevelle, Alen Weed, Dallas, for appellants.

Kemp, Smith, White, Duncan & Hammond, William J. Derrick, E. Link Beck, El Paso, for appellee.

## OPINION

WARD, Justice.

This appeal is from the granting of a temporary injunction issued as ancillary relief in a suit for damages for breach of contracts. We will reverse.

In May of 1976, the construction business known as C. H. Leavell and Company entered into a stock purchase agreement with Sarkisian Brothers, Inc. Pursuant to the stock purchase agreement, C. H. Leavell and Company formed a wholly owned subsidiary called Leavell Construction Company to which it transferred the C. H. Leavell and Company's assets used in its construction operations. C. H. Leavell and Company then changed its name to The Leavell Company. The stock in the subsidiary, Leavell Construction Company, was transferred to Sarkisian Brothers, Inc., and Leavell Construction Company then changed its name to C. H. Leavell and Company. Thus, the construction operations and business were thereafter owned and operated by a new corporation known as C. H. Leavell and Company, a wholly owned subsidiary of Sarkisian Brothers, Inc. The Leavell Company, or "Leavell," then entered into two further agreements known as the management agreement and the consulting agreement with the new C. H. Leavell and Company, which will be referred to as "CHL." Performance under these two contracts was guaranteed by Sarkisian Brothers, Inc., hereinafter referred to as "SBI," and its parent corporation, Sarkisian Brothers Holding Company, hereinafter referred to as "SBHC."

Under the management agreement, CHL agreed to manage the operations of certain construction projects which Leavell had contracted for prior to the sale of the construction operations. The management agreement provided that CHL was to manage these projects on behalf of Leavell and to collect funds for Leavell's account, but there was no assignment made of these contracts to CHL. Further, the agreement obligated CHL to maintain on Leavell's behalf all files and records and to deliver the files, books of accounts, and records to Leavell upon completion of the contracts. The agreement specifically provided for compensation to CHL and Leavell. CHL was to collect and keep 33⅓ percent of the actual aggregate pre-tax net profits as defined in the management agreement. Leavell was to be compensated with the remaining amount of the pre-tax net profits on each of the contracts at a time and on a formula as set out in the agreement.

Under the terms of the consulting agreement, Leavell, in exchange for an agreement to provide consulting services to CHL, was to receive compensation based on a formula contained in that agreement.

At the time of these transactions, eight construction projects were then in progress and came under the terms of both the management and consulting agreements.

The evidence produced at the hearing for the temporary injunction was undisputed and consisted of three witnesses offered by Leavell and copies of the contracts and correspondence between the parties and others. Leavell established that immediately following the execution of the contracts, Leavell began experiencing payment problems with CHL. Payments were at first late and then, following a payment in October, 1976, no further payments were made

to Leavell. Excuses were offered to Leavell that miscalculations had been made and that CHL had paid more than was due under the contracts. CHL was obligated under the contracts to provide monthly calculations for Leavell, and these ceased, but at one time it promised to provide quarterly calculations. After May, 1977, the Defendants consistently ignored or disregarded all requests for payment or information from Leavell.

Leavell had received the sum of $275,-000.00 under the management agreement and calculated that through December 31, 1977, there was due an additional sum of about $156,000.00 under that agreement and about $15,000.00 due and unpaid under the consulting agreement. By the spring of 1978, four of the eight contracts subject to the management agreement had been fully completed, but CHL had failed to forward to Leavell the books and records of those projects in violation of the terms of the management agreement. At the time of the hearing on the temporary injunction, only two of the projects were still in the process of being built, two more having been completed but subject to final billing and collection.

Demands for performance and information having been ignored, Leavell notified the three Defendants that all authority granted to CHL by Leavell under the management agreement to act on Leavell's behalf was revoked. Simultaneously, the owners of the two projects under construction and the two projects which were subject to final billing and collection were notified of the revocation of authority. CHL immediately contacted the owners of the projects and threatened litigation if any payments were made to Leavell. Prior to that notice made by Leavell, the owners had made payments to CHL without problems, and, as far as disclosed, without knowledge that there had ever been any transfer of real ownership in the project management.

On March 16, 1978, SBI filed suit in the United States District Court for the Northern District of Texas seeking, among other things, the right to an offset provided for in the stock purchase agreement, alleging that because of that it had the right to refuse to make payments under the terms of that agreement, the management agreement, or the consulting agreement. It was on the next day that The Leavell Company filed the present suit in the District Court of El Paso County. There it alleged that the Defendants had breached their contracts, that it was entitled to damages, cancellation of the contracts, an accounting, and, as ancillary thereto, a temporary injunction.

At the conclusion of the hearing appealed from, the trial Court issued its temporary injunction which: (1) compelled the three Defendants, CHL, SBI and SBHC, to direct the owners of the four projects not fully completed to make all payments then due or thereafter due under the contracts to The Leavell Company, notices to the four owners to be made no later than April 28, 1978; (2) compelled the Defendants, CHL, SBI and SBHC, to pay to The Leavell Company, no later than April 28, 1978, any and all monies then held by those Defendants which had been paid to them previously by the owners of all eight of the original contracts; and (3) restrained and enjoined the three Defendants, their officers, agents, servants, employees and attorneys from interfering with, participating in, or dealing in any manner with the four projects not completely finished.

The Defendants on this appeal assign five points of error to the effect that the order does set forth the reasons for its issuance as specifically as required by Rule 683, Tex.R. Civ.P.; that the order does not preserve the status quo pending hearing on the merits; that the order is invalid as the trial Court abused its discretion because there was no evidence to show any threat of immediate and irreparable injury, nor the absence of an adequate remedy at law in favor of the Plaintiff; and, finally, that the petition was not properly verified.

██ The parties agree on the settled rules regarding temporary injunctions that the trial Court has broad discretion in its determination of whether to issue a writ of

temporary injunction, and that its order should be reversed only when an abuse of discretion is shown; that the applicant for the relief generally must show a "probable right" and "probable injury;" and that the only question before the Court is the right of the applicant to a preservation of the status quo of the subject matter of the suit pending a final trial of the case on its merits, the status quo to be preserved by temporary injunction being the " 'last, actual, peaceable, noncontested status which preceded the pending controversy.' " *Transport Co. of Texas v. Robertson Transports, Inc.,* 152 Tex. 551, 261 S.W.2d 549 (1953). Principles of equity govern all forms of injunctive relief, including the granting of a temporary injunction. In this case, where the principal dispute between the parties is over the terms of a contract and its possible breach, the absence of an adequate remedy at law is essential, and unless such is shown the writ will not issue. *Hill v. Brown,* 237 S.W. 252 (Tex.Com.App. 1922). It is sometimes said that there must be a finding of irreparable injury, although, as has been explained, the term is somewhat of a misnomer. 6 Texas Prac. (Lowe) Sec. 113 and 114 (1973).

■ In the instant case, the order granting the temporary injunction set forth the following reasons for its issuance:

"  *  *  * that TLC established that it probably will suffer irreparable harm before final hearing on the merits can be had unless Defendants are restrained, and it further appearing to the Court that the actions of CHL in contacting and threatening litigation against the owners of the contracts hereinafter designated were intentionally designed to cause harm to TLC and will result in harm to the owners and subcontractors, thus justifying a mandatory injunction  *  *  *."

While the generalization made in the first part of the quoted material was not sufficient, we believe that the balance of the quoted material was a sufficient compliance with the requirements of Rule 683. *Transport Co. of Texas v. Robertson Transports, Inc.,* supra at 553, 261 S.W.2d 549; *Charton*

*Corporation v. Brockette,* 534 S.W.2d 401 (Tex.Civ.App.—Corpus Christi 1976, writ ref'd n. r. e.). The order setting forth the reasons could have been more specific and certainly more relevant to the acts enjoined, but being sufficient, we overrule the first point.

■ In our opinion, however, there are more serious defects present. The Plaintiff, while engaging in some eight construction projects, undertook through the series of contracts described to dispose of its direct participation in those eight contracts and, for certain valid reasons, did so without executing any assignment of those contracts. As a consequence, on each construction project, a new corporation, the "C. H. Leavell and Company," with new owners but bearing the identical name to the old contractor, took over the general management of the eight construction projects, making all payments and collecting all amounts due under the contracts. This was all done apparently without disturbing the progress in the construction and, as indicated and suggested by the evidence, without the knowledge of the project owners or of the project subcontractors. No criticism is to be implied by this statement. We point out that this status was created on June 1, 1976, and then continued peacefully and undisturbed until March, 1978, by which time four projects had been completely disposed of, two were in the last stages, and two were unfinished. During all of this period of time, the Defendant CHL performed its necessary duties as general contractor, the owners made their payments to the Defendant CHL, and the Defendant CHL in turn made the necessary payments to the subcontractors. Clearly, the last actual, peaceable, noncontested status which preceded the pending controversy in this cause was that of CHL operating under the terms of the management agreement without interference from the Plaintiff. Although the Plaintiff was justified in acting to protect its own interests, it disturbed the status when it wrote its letters of revocation on March 17, 1978, which first notified the owners of each of the four remaining projects of the existence of the

management agreement between Leavell and CHL, of the name change of Leavell, of the conflict between Leavell and CHL, and that payments should be made to Leavell from then on. Regardless of its justifiable concern over the lack of payments, lack of reports, and the failure to furnish the records which the Plaintiff may have had, the overall status quo of the projects was disturbed by the granting of the injunction and the entry of the order compelling the Defendants to notify the owners to pay this new corporation, the Plaintiff, all sums due or to become due under the projects and prohibiting the various Defendants from participating or dealing in any manner with the projects. *State v. Southwestern Bell Telephone Company,* 526 S.W.2d 526 (Tex. 1975); *Janus Films, Inc. v. City of Fort Worth,* 163 Tex. 616, 358 S.W.2d 589 (1962); *Houck v. Kroger Co.,* 555 S.W.2d 803 (Tex. Civ.App.—Houston [14th Dist.] 1977, writ ref'd n. r. e.). The Defendants' second point is sustained.

Ordinarily, contractual rights will not be enforced by writs of injunction except in unusual circumstances, since an adequate remedy at law is usually available through a suit for damages. 6 Texas Prac. (Lowe) Sec. 16 (1973). No exceptional situation has been shown. The main suit was simply a suit for damages and accounting, and no proof has been offered as to the financial condition of any of the Defendants, and, as previously pointed out, the ancillary remedy asked for did not preserve the status quo.

This points up the next two complaints made by the Defendants, which essentially are that there has been no proof of the absence of an adequate remedy at law. The Plaintiff's president testified that not only was the Plaintiff due some $170,000.00, but his real concern was that the subcontractors on one of the projects in Oklahoma might not be paid, and that this amounted to over $800,000.00. He stated that he did not feel that he could rely on the Defendants to pay the subcontractors; and that if the retainage from the Oklahoma project was not released to the Plaintiff, the Plaintiff would then have to borrow the money to pay the subcontractors or face a suit on

their performance bond, and this would result in stopping the Plaintiff from doing anything further in its business activities.

There is no evidence that the Defendants have failed as competent contractors in the construction of the various projects, nor that they have at any time failed to pay any subcontractor, nor that they would fail to pay the subcontractors, nor that they are insolvent. Under these facts, Leavell has failed to establish that it does not have an adequate legal remedy or that it will suffer irreparable injury. "Irreparable injury" is stated to be " 'an injury of such nature that the injured party cannot be adequately compensated therefor in damages, or that the damages which result therefrom cannot be measured by any certain pecuniary standard.' " 6 Texas Prac. (Lowe) Sec. 114 (1973). As far as the evidence shows, an adequate remedy at law did exist and the extraordinary remedy of a temporary injunction should not have been granted. *Gihls Properties, Inc. v. Main Lafrentz & Co.,* 542 S.W.2d 203 (Tex.Civ.App. —El Paso 1976, no writ); *Great American Mortgage Investors v. Republic of Texas Savings Association,* 538 S.W.2d 146 (Tex. Civ.App.—Houston [14th Dist.] 1976, no writ); *Allied Bank of Texas v. Preissman,* 532 S.W.2d 699 (Tex.Civ.App.—San Antonio 1976, writ ref'd n. r. e.).

We have sustained the Defendants' second, third, and fourth points. We do not reach the last point. The order of the trial Court is reversed and the temporary injunction is dissolved.