C.H. LEAVELL & COMPANY, et al., Appellants,

v.

The LEAVELL COMPANY, Appellee.

No. 7002.

Court of Appeals of Texas, El Paso.

Aug. 31, 1984.

Rehearing Denied Oct. 3, 1984.

Paul Dudley, Dudley & Dudley, El Paso, for appellants.

W. Royal Furgeson, Jr., E. Link Beck, Kemp, Smith, Duncan, & Hammond, El Paso, for appellee.

Before STEPHEN F. PRESLAR, C.J., and WARD and OSBORN, JJ.

## OPINION

WARD, Justice.

This suit involves a breach of contract and an accounting arising out of the failure of a corporate buyer to pay the seller its price when a construction business was sold. Trial was to a jury which returned a verdict in favor of the seller. Judgment was thereafter entered based on the jury verdict, and the corporate seller recovered of and from the corporate purchaser and its two guarantors the sum of $581,641.00. The corporate purchaser and the two guarantors appeal and complain of the trial court's alleged errors regarding the court's charge to the jury. We affirm.

The factual background leading to this litigation is complicated, and reference is made to a prior opinion of this Court where a temporary injunction granted to the corporate Plaintiff was dissolved. *C.H. Leavell and Company v. Leavell Company*, 570 S.W.2d 404 (Tex.Civ.App.—El Paso 1978, no writ). Some of the facts set out in that opinion are repeated. In May of 1976, the construction business known as C.H. Leavell and Company entered into a stock purchase agreement with Sarkisian Brothers, Inc. Pursuant to the stock purchase agreement, C.H. Leavell and Company formed a wholly owned subsidiary called Leavell Construction Company to which it transferred the C.H. Leavell and Company's assets used in its construction operations. C.H. Leavell and Company then changed its name to The Leavell Company. The stock in the subsidiary, Leavell Construction Company, was transferred to Sarkisian Brothers, Inc., and Leavell Construction Company then changed its name to C.H. Leavell and Company. Thus, the construction operation and business was thereafter owned and operated by a new corporation known as C.H. Leavell and Company, a wholly owned subsidiary of Sarkisian Brothers, Inc. Under the controlling terms of the stock purchase agreement, The Leavell Company then entered into two further agreements known as the Management Agreement and the Consulting Agreement with the new C.H. Leavell and Company, hereinafter referred to as CHL. Also, under the terms of the stock purchase agreement, CHL's obligations under the Management Agreement and the Consulting Agreement were guaranteed by Sarkisian Brothers, Inc. and its own parent corporation, Sarkisian Brothers Holding Company.

At this point it is noted and summarized that the stock purchase agreement was the cornerstone of the three contracts. It essentially transferred the stock of CHL to Sarkisian Brothers, Inc., the stock being transferred under terms of contractual devices which required: (1) the name of CHL to be changed to The Leavell Company, (2) the formation of a subsidiary corporation called CHL and (3) the transfer of construction assets to CHL. Therefore, although the parties to the stock purchase agreement were Sarkisian Brothers, Inc. and CHL, CHL became The Leavell Company. Thus, the actual seller was The Leavell Company, the Plaintiff in this case and Charles Leavell.

The Management Agreement and the Consulting Agreement were signed as of May 31, 1976. Under the Management Agreement, the parties established a procedure for managing and completing eight construction projects which had been contracted for prior to the sale of the construction operations. The Management Agreement provided that CHL was to manage the projects on behalf of the seller, to collect all account receivables and pay all subcontractors and suppliers for the seller's account; but there was no assignment

made of these contracts to CHL. Further, the agreement obligated CHL to maintain on seller's behalf all files and records and to deliver the files, books, accounts and records to the seller upon completion of the contracts. The agreement specifically provided for compensation to CHL and to The Leavell Company. CHL was to collect and keep 33⅓% of the actual aggregate pre-tax net profits as defined in the Management Agreement and The Leavell Company was to be paid the remaining amount of the pre-tax net profits on each of the contracts at a time and on a formula as set out in the agreement.

Under the terms of the Consulting Agreement, Charles Leavell, Chief Executive Officer and owner of The Leavell Company, became a party to that agreement, and he and other employees of the Leavell Company were to provide discretionary consulting services to CHL. The Leavell Company was to be paid under the Consulting Agreement in accordance with a formula contained in the agreement, and Charles Leavell was to continue as Chairman of the Board of Directors of CHL, however, with no power to exert any control over CHL. In this regard, the stock purchase agreement provided only that Charles Leavell would consult and counsel with CHL at his convenience and as requested. His attendance at the CHL offices and elsewhere was not required and he was not committed to spend any particular amount of time in his capacity as board chairman.

On June 1, 1976, CHL began to manage the eight projects. Thereafter, The Leavell Company as the seller began experiencing payment problems with CHL. Payments were at first late, and then following the payment in October, 1976, no further payments were made to The Leavell Company. Excuses were offered that miscalculations had been made and that CHL had paid more than was due under the various agreements. CHL was obligated under the contracts to provide monthly calculations reflecting amounts owed. After a while these reports ceased, although the last one indicated that various amounts were due and owing to The Leavell Company. By

the spring of 1977, CHL and its owners had disregarded all requests for payments or information made by The Leavell Company.

By the spring of 1978, four of the eight construction projects subject to the Management Agreement had been completed, but CHL had failed to forward to The Leavell Company the books and records of those projects as required by the terms of the Management Agreement. Since no information was forthcoming, The Leavell Company filed the present suit in the middle of March, 1978. It also began efforts to take over the projects and secured a temporary injunction which was later dissolved on the appeal. Because of those actions CHL filed suit in Federal District Court in Dallas against Charles Leavell, and that case was transferred to El Paso and then later consolidated into this case as a counterclaim.

Trial was to a jury and lasted almost four weeks. As to the issues submitted, the jury by its answers found: (1) that before March 17, 1978, CHL had materially breached the Management Agreement by failing to pay money due under the agreement to The Leavell Company, (2) that The Leavell Company suffered damage by reason of the breach of the Management Agreement by CHL, (3) that $184,809.00 would fairly and reasonably compensate The Leavell Company for the damage caused by that breach, (4) that before March 17, 1978, CHL had materially breached the Consulting Agreement by failing to pay money due under the agreement to The Leavell Company, (5) that The Leavell Company suffered damages by CHL's breach of the Consulting Agreement and (6) that $396,832.00 would reasonably compensate The Leavell Company for the damages caused by that breach. The jury also found that The Leavell Company was entitled to legal fees totaling $111,623.50.

The trial court also submitted issues to the jury asking separately whether The Leavell Company before March 17, 1978, had breached the management, consulting and stock purchase agreements. By its

answers, the jury to Special Issue (8) failed to find that before March 17, 1978, The Leavell Company materially breached the Management Agreement by receiving and/or claiming money due under such agreement from CHL; to Special Issue (11) failed to find that before March 17, 1978, The Leavell Company materially breached the Consulting Agreement by receiving and/or claiming money due under such agreement from CHL; to Special Issue (14) failed to find that before March 17, 1978, the Leavell Company materially breached the stock purchase agreement by an inaccurate listing of assets and/or liabilities. Finally, the jury made no award to the defendants for attorney's fees.

Based on the jury verdict, the trial court rendered judgment for The Leavell Company for the $581,641.00 damages but denied its attorney's fees claim. The judgment entered was against CHL, and also against Sarkisian Brothers, Inc. and Sarkisian Brothers Holding Company under their respective guaranty agreements. After post-verdict and post-judgment motions were disposed of, this appeal was taken by CHL and the two corporate guarantors.

The Defendants' main complaints on this appeal are based on the status of Charles Leavell, who under the terms of the stock purchase agreement and the subsequent Consulting Agreement became Chairman of the Board of the purchasing corporation CHL. The basic stock purchase agreement provided that Charles Leavell would continue to serve as Chairman of the Board of CHL, and would serve in such capacity as long as he desired, subject to the approval of Sarkisian Brothers, Inc. and of the Board of Directors of CHL. It provided that his services would consist of consulting and counseling with CHL and its officers at Leavell's convenience and as requested by CHL and by Sarkisian Brothers, Inc. It was specifically agreed that Leavell's attendance at the offices of CHL or elsewhere would not be required and that Leavell was not committed to spend any particular amount of time in his capacity as Chairman of the Board or in any other capacity. Similar provisions regarding Charles Leavell were repeated in the subsequent Consulting Agreement.

■ Based upon the above, Defendants argue that Charles Leavell had the strict fiduciary duty to CHL to exercise the highest good faith and loyalty in dealing with matters affecting the corporation's business. In all matters affecting the directors or officers of a corporation, a director or officer must act solely with an eye to its best interest, unhampered by any pecuniary interest of his own. *International Bankers Life Insurance Company v. Holloway*, 368 S.W.2d 567 (Tex.1963); *Canion v. Texas Cycle Supply, Inc.*, 537 S.W.2d 510 (Tex.Civ.App.—Austin 1976, writ ref'd n.r.e.); *Dowdle v. Texas American Oil Corporation*, 503 S.W.2d 647 (Tex.Civ.App. —El Paso 1973, no writ).

■ As a further development of these basic principles, the courts have been careful in enforcing contracts made between corporations having common directors or officers. There, the rule is that the enforcement of such contracts is not to be favored. Where a sale is involved and where the fairness of such transaction is challenged because of a common director or officer, a plaintiff corporation seeking to enforce the contract must demonstrate by a preponderance of the evidence that the contract of sale was fair in every respect and that the defendant received full and adequate consideration. *Crook v. Williams Drug Co., Inc.*, 558 S.W.2d 500 (Tex. Civ.App.—Tyler 1977, writ ref'd n.r.e.); *Gaither v. Moody*, 528 S.W.2d 875 (Tex. Civ.App.—Houston [14th Dist.] 1975, writ ref'd n.r.e.); *Reynolds-Southwestern Corporation v. Dresser Industries, Inc.*, 438 S.W.2d 135 (Tex.Civ.App.—Houston [14th Dist.] 1969, writ ref'd n.r.e.); *Felty v. National Oil Co. of Texas*, 155 S.W.2d 656 (Tex.Civ.App.—San Antonio 1941, no writ).

Based on this rule, the Defendants urged as their second point of error that it was reversible error for the trial court to fail to either instruct the jury or to submit a special issue on The Leavell Company's burden to prove the fairness and adequacy of the

consideration of the Management and Consulting Agreements. The Defendants point out that Charles Leavell was an officer and director of both The Leavell Company and CHL from CHL's inception until March 17, 1978. The Leavell Company sued for breaches of both the Management and Consulting agreements. CHL showed that under the Management Agreement it actually managed the eight projects to completion for no compensation, since the one-third profit it ostensibly was to receive as its share had to be paid back to The Leavell Company under the Consulting Agreement. Further, under the Consulting Agreement, The Leavell Company was awarded the sum of $396,832.00, and it was established that Mr. Leavell brought CHL only one business opportunity and ceased consulting after January, 1977. Thus, it insists that issues of fairness and adequacy of consideration were before the court and that no evidence establishing those elements was introduced by the Plaintiff.

The argument ignores the true nature of the relationship between the parties and the real parties in interest to the contracts in dispute. The basic contract between the parties was the stock purchase agreement. The purchaser in that agreement was Sarkisian Brothers, Inc. and the seller was The Leavell Company and Charles Leavell. As previously explained, that was the ultimate result which came about because of the required name changes.

The changes of name coupled with the creation of the new corporation was a contractual device The Leavell Company and Sarkisian Brothers, Inc. used to sell the name C.H. Leavell and Company, The Leavell Company contracts in progress and The Leavell Company construction assets to Sarkisian Brothers, Inc. One of the main reasons Sarkisian Brothers, Inc. and George Sarkisian wanted to buy CHL was that the name of the company was impressive. Since several of the construction contracts were nonassignable, to get the C.H. Leavell and Company name and the contracts in progress among other things, the contractual device was utilized to effect an indirect method of purchase.

Charles Leavell was also a party to the stock purchase agreement as he was a majority shareholder and Chairman of the Board of The Leavell Company. He had no position with Sarkisian Brothers, Inc. With Charles Leavell on The Leavell Company's side of the table and George Sarkisian on the side of Sarkisian Brothers, Inc., the agreement was written as a result of an arms-length set of negotiations between the parties. These same considerations led to the formation of the Management Agreement and the Consulting Agreement. The Leavell Company was contractually obligated to enter into the Management and Consulting Agreements as a result of the same arms-length negotiations which produced the stock purchase agreement. CHL was simply the corporate vehicle utilized to transfer the construction assets of The Leavell Company to Sarkisian Brothers, Inc. and to insure the continuity of the projects which had already been begun. The Leavell Company and Sarkisian Brothers, Inc., the real parties, had no common members on their boards of directors. The cases cited and relied upon by the Defendants involving common directors are not applicable. One prerequisite to the application of the principles relating to contracts between corporations having common directors or officers is that the contracting corporations actually have directors or officers in common at the time the transaction is entered into. 19 Am.Jur.2d, Corporations sec. 1307 (1965).

■ In this case, questions of fairness and adequacy of consideration regarding the contract were not raised by the facts because no common officers or directors served on the boards of the two adverse parties, The Leavell Company and Sarkisian Brothers, Inc. The existence of arms-length negotiations clearly negates the Defendants' arguments regarding the "fairness" and "consideration" doctrines. The Management Agreement and the Consulting Agreement were follow-ups and already mandated by the terms of the stock purchase agreement. In addition, Charles

Leavell had no influence, power or control over Sarkisian Brothers, Inc. as purchaser of CHL, that would have allowed him to impose some unfair advantage in the negotiation or execution of either agreement. His relationship with Sarkisian Brothers, Inc. and George Sarkisian were clearly at arms-length. Under the circumstances, the fairness and consideration doctrines are not applicable. *See: Bauman v. Hayes*, 379 So.2d 1251 (Ala.Sup.Ct.1980).

■ Additionally, the lack of fairness or the want of consideration of either the Management Agreement or the Consulting Agreement was not raised by the Defendants' pleadings. The complaint has been waived. Rule 93(j) (now paragraph 9 of Rule 93) and Rule 94, Tex.R.Civ.P. For the reasons stated, the second point is overruled.

■ The Defendants' fourth point is that the trial court erred as it mischaracterized to the jury the entire theory and basis for CHL's counterclaim and defense, the Defendants arguing that the jury was given special issues which bore little or no relation to the evidence which the Defendants presented at trial. The trial court submitted the Defendants' counterclaim against the Plaintiff in Special Issues Nos. 8 (Management Agreement), 11 (Consulting Agreement) and 14 (stock purchase agreement). The point is extremely multifarious and covers the waterfront as far as the Defendants' complaints are concerned about the court's charge regarding the Defendants' counterclaim and about the way it failed to submit the charge in the manner desired by the Defendants. Rule 418, Tex. R.Civ.P. The point will be considered, as the Defendants' specific complaints are discernible from the statement and argument under the point.

The Defendants' basis for offsets against The Leavell Company involved a great number of claims including items of misrepresentation and concealment surrounding the original sale and in the subsequent itemization of assets and liabilities as required by the various contracts; alleged concealments of disputes with various sub-contractors; alleged deficiencies of services rendered under the Consulting Agreement; alleged overpayments made by Sarkisian Brothers, Inc. to the Plaintiff and finally numerous complaints of the actions taken by the Plaintiff at the time of the final breakup on March 17, 1978, and afterwards, including the filing of the present law suit.

In support of their position, the Defendants requested of the trial court a series of special issues. Requested Special Issue No. 4 inquired of the jury if The Leavell Company had breached a stock purchase agreement in any of some ten listed specific items. Requested Special Issue No. 5 inquired if The Leavell Company had breached the Management Agreement in any of some eighteen specific items. Requested Special Issue No. 9 which inquired if The Leavell Company or Charles Leavell had breached their obligations under the Consulting Agreement in any of thirty-one specific items. Requested Special Issue No. 12 inquired if Sarkisian Brothers, Inc. had overpaid The Leavell Company under the stock purchase agreement because of undisclosed amortization and depreciation items having a value of $10,200.00. Requested Special Issue No. 13 inquired if Sarkisian Brothers, Inc. had overpaid The Leavell Company under the stock purchase agreement because of overestimates of profits on the McAlester project. Requested Special Issue No. 14 inquired if the Sarkisian Brothers had overpaid The Leavell Company under the stock purchase agreement because of The Leavell Company's failure to furnish information regarding a vacation pay liability in the amount of $23,201.00. Special Issue No. 15 inquired if Sarkisian Brothers was damaged by The Leavell Company's failure to transfer to CHL certain construction equipment having a value of approximately $45,000.00. The trial court refused to grant this series of special issues and the Defendants now complain of this failure.

Defects in the issues and problems that could have arisen from the submission are readily apparent. Though no complaint is

now made on this appeal regarding the trial court's failure to submit requested Special Issue No. 4 which inquired of various ways that The Leavell Company breached the stock purchase agreement it will be discussed as it contained defects which were repeated in the other issues. Thus, the inquiry was made in requested Special Issue No. 4 as to a breach by overstating anticipated profits from the McAlester project by approximately $300,000.00 due to outright omissions and errors; a failure to disclose to the Defendants the depreciation and amortization items amounting to $10,200.00; a failure to disclose to the Defendants the accumulated vacation time of various CHL personnel having a value of $23,201.00; and a failure to transfer to CHL certain construction equipment in El Paso having a value of approximately $45,000.00. The overstatement of the anticipated profits from the McAlester project was repeated in Special Issue No. 5 which inquired if The Leavell Company breached the Management Agreement; was repeated in Special Issue No. 9 which inquired if The Leavell Company breached their obligations under the Consulting Agreement, and was again inquired about in Special Issue No. 13 in a form which inquired if Sarkisian Brothers, Inc. had overpaid The Leavell Company under the stock purchase agreement because estimates of profits on the McAlester project did not exist. By making these overlapping submissions of the same item, a jury if it had returned a favorable verdict on those issues would have endangered its verdict by duplicating damages and creating a double recovery. 3 R. McDonald, Civil Practice Revised, sec. 12.23.3 (1983). The same was true regarding the requested items on failure to disclose amortization items, on failure to disclose accumulated vacation time and on the failure to transfer the equipment, these items being duplicated in individual special issues which were requested. A Subdivision under the requested Special Issue No. 4 regarding the selling to Sarkisian Brothers of a business incapable of getting sufficient business at best would be the foundation for a fraud

case and not a breach of contract. The inquiry regarding a failure to provide the required consulting services of Charles Leavell as a breach of the stock purchase agreement was defective, as the consulting agreement covered this contingency and specifically provided that the consulting services of Charles Leavell and the other management personnel of The Leavell Company would be solely at their discretion. This could in no manner form a basis for a breach of contract. A series of questions relating to the failure to disclose disputes with Homart as a contemplated breach of the stock purchase agreement entangled a fraud allegation with a dispute which arose after all contracts were entered into.

These defects and duplications were repeated in the other requested issues where long itemizations of alleged breaches were set out. As a result of this, the trial court tried to simplify the submission and did submit broad issues on each of the three contracts in question. In this regard, a trial court has almost complete discretion so long as the issues in question are unambiguous and confine the jury to the pleadings and the evidence. Revised Rule 277, Tex.R.Civ.P. Broad submission of issues in contract cases has long been approved by Texas courts. *Jon-T Farms; Inc. v. Goodpasture, Inc.*, 554 S.W.2d 743 (Tex. Civ.App.—Amarillo 1977, writ ref'd. n.r.e.). The revised rule brought little or no change to the former practice. Pope and Lowerre, The State of the Special Verdict—1979, 11 St. Mary's L.J. 1, 6 (1979).

The trial court determined to reduce the complaints made by the Defendants to alleged breaches of the three contracts and thus submitted the three issues in general terms. The record reveals that the Defendants' main complaints were (1) alleged overstating of anticipated profits from the McAlester contract; (2) failure to disclose to the Defendants the depreciation and amortization items amounting to $10,200.00 as later discussed in a Peat, Marwick, Mitchell and Company report; (3) failure to disclose to the Defendants accumulated va-

cation items of $23,201.00 which had accrued at the time of sale; and (4) the failure at the time of sale to transfer construction equipment of a value of $45,000.00 to CHL. All of these items relate to the Plaintiff's obligation under the stock purchase agreement to furnish an accurate list of assets and liabilities. These items were fully covered and submitted under the court's Special Issue No. 14 and was answered by the jury against the Defendants' contentions.

Among the rest of the complaints was an item of $126,265.00 owed to CHL by The Leavell Company. From The Leavell Company's viewpoint, this item was accounted for by their deducting the item from their claim against the Defendants. From the Defendants' viewpoint, this claim of overpayment was adequately submitted by the trial court by Special Issues Nos. 8 and 11.

The largest complaint made by the Defendants went to their claim that somehow they were owed over $1,000,000.00 on an item of overhead which they had undertaken when they purchased the company. By what manner this item breached any of the contracts is not revealed by the evidence. The same holds true for all other complaints made by the Defendants as to the disputed items which occurred prior to March 17, 1978.

The trial court in the submission of the three special issues relating to the Defendants' claims limited the jury to a consideration of what had occurred before March 17, 1978. Among the Defendants' requested issues were inquiries relating to alleged breaches of the contracts which occurred after that date. There were some eighteen of these items. Although the Defendants requested the submission of these items by their requested issues, they made no objection to the failure of the court to submit them nor did they make any objection to the limitation made by the trial court on the jury's consideration of any events which occurred after March 17, 1978. This error must have been preserved by an objection to the charge. No such objection was made and the error has not been preserved. Rules 272 and 274, Tex.R. Civ.P.; 3 R. McDonald, Texas Civil Practice Revised, secs. 12.26–c, 12.27.2—(b)(1983).

■ Further, as will be later pointed out, the trial court was correct in not submitting any inquiry to the jury regarding breaches of the contracts made by The Leavell Company which occurred after March 17, 1978. The Defendants' theory was that these breaches excused the Defendants from making any payments under the Management and Consulting Agreements to the Plaintiff. Because the Defendants retained the assets of the business and have chosen to treat the contracts as continuing, they have deprived themselves of any excuse for ceasing performance of payments on their own part. *Hanks v. GAB Business Services, Inc.*, 644 S.W.2d 707 (Tex.1983). They offered no proof of monetary damages for those actions taken by the Plaintiff after March 17, 1978. As to those actions, their cause of action failed. For the reasons stated, the fourth point is overruled.

Point of Error No. Five is to the effect that judgment in favor of The Leavell Company pursuant to the Management and Consulting Agreements should be set aside as a matter of law. Under the point, the Defendants argue that the trial court erred in not granting their motion for judgment notwithstanding the verdict. In this regard, the Defendants first repeat their contention that The Leavell Company had the burden of proving as necessary elements of their cause of action the fairness of the contracts and the adequacy of the consideration to CHL under the Management and Consulting Agreements and since no evidence of those matters was offered, the Defendants should be entitled to a judgment non obstante veredicto. The contention has been previously discussed and is again overruled.

■ Under this point, the Defendants repeat their contention that Mr. Leavell and The Leavell Company breached the Consulting Agreement since he provided no consulting services after January, 1977. No breach of the Consulting Agreement is

presented since Leavell and the other personnel of The Leavell Company were given the absolute right under the terms of the Consulting Agreement to consult only at their pleasure. Further, the evidence fails to disclose where any of these people were ever called upon to consult or furnish any kind of service after January, 1977.

Finally, the Defendants contend that the actions taken by Leavell and The Leavell Company on March 17, 1978, and thereafter excuse the obligation of CHL to pay any amounts on any of the contracts. However, the three contracts involved in this case are closely interwoven to effect the sale of the contracting business, its good will, its contracts and its assets to the Defendants. In turn, the Defendants were obligated to make the payments as called for in the Management and Consulting Agreements. At the same time, Leavell and The Leavell Company obligated themselves to consultation when called for and also obligated themselves not to interfere with the Defendants nor to compete with them. At all times during the dispute and subsequent litigation the Defendants chose to treat the sale of the business as continuing. They have retained all the assets of the business and continued operations. By treating the contract as continuing, they have deprived themselves of any excuse for ceasing performance of the payments on their own part. *Hanks v. GAB Business Services, Inc., supra.* Any wrongful actions taken by Leavell and The Leavell Company after March 17 which caused damages to the Defendants could have been offset by their own suit for damages. They failed to prove these damages or make this claim. Again their claim for offset for those actions taken by The Leavell Company on and after March 17 were not submitted to the jury and no objections to the charge were made in this regard. The fifth point is overruled.

■ The next two points will be considered together. Point of Error No. Six is to the effect that the trial court committed reversible error by submitting Special Issues Nos. 1, 2, 3, 4, 5 and 6 to the jury because there was no evidence supporting the submission of those issues. Point of Error No. Seven is that the trial court committed reversible error by submitting Special Issues Nos. 1, 2, 3, 4, 5 and 6 to the jury because there was insufficient evidence supporting submission of those issues. This latter point, Point of Error No. Seven, is a "no evidence" point. The contention that an issue should not have been submitted because of the insufficiency of the evidence is subject to only one construction. It can only mean that there is no evidence to warrant submission of the issue. *Reina v. General Accident Fire and Life Assurance Corp. Ltd.,* 611 S.W.2d 415 (Tex.1981). Applying the no evidence test, we must consider only the evidence and the reasonable inferences therefrom which viewed in its most favorable light support the Plaintiff's issues and we must reject all evidence and inferences to the contrary. *Garza v. Alviar,* 395 S.W.2d 821, 824 (Tex.1965).

■ As to the amounts due The Leavell Company under the Management Agreement, the Defendants' auditors, Price, Waterhouse and Company, based on figures that they had acquired from CHL, reported that the then liability to The Leavell Company as of March 31, 1977, was $187,860.00. At the same time CHL's tax return reported a liability to The Leavell Company of $187,800.00. Further, based on figures which accountant Hayes furnished to The Leavell Company, The Leavell Company determined that $156,000.00 was owed to them under that Management Agreement some two months before March, 1978. Finally, Sue Blythe, the Plaintiff's accountant testified, that from the admissions made by the Defendants and other information that they were required to give to her, the total amount owed under the Management Agreement amounted to $184,809.00.

As to the Consulting Agreement, this last witness, by use of the same information, arrived at the conclusion that $396,832.00 was due to The Leavell Company. Point of Error No. Seven is overruled.

We next turn to the Defendants' complaints as to the cause of action asserted by CHL against Charles Leavell, who after the sale was completed became the Chairman of the Board of CHL. We have previously observed the strictness of the rule regarding the general conduct of an officer and director in his dealings with the corporation. The rule is not without its limitations, however, and those limitations were observed in *Paddock v. Siemoneit*, 147 Tex. 571, 218 S.W.2d 428 (1949) as follows:

> Undoubtedly, as a director and the managing officer of the corporation, Siemoneit occupied the position of a fiduciary toward the company .... Nevertheless, the texts cited point out that the officer and directors of corporations are not strictly trustees, and that their duties and liabilities are not necessarily identical with those of other fiduciaries. The character and consequences of the acts of an officer or director have apparently been determined on the basis of the facts of each case. Acts which might well be considered breaches of trust as to other fiduciaries have not always been so regarded in cases of corporate officers or directors.

In the peculiar fact situation before us, the status of Charles Leavell resembled that of Mr. Cain in *Tennessee-Louisiana Oil Company v. Cain*, 400 S.W.2d 318 (Tex.1966). There, after an extended arms-length transaction, Tennessee-Louisiana acquired all of the assets of Fifteen Oil Company. Mr. Cain was president of Fifteen and he was paid $57,500.00 as severance pay. He was not retained in the employment of the new company but he did agree that he would remain available in a retained advisory capacity for a period of six months after the sale so as to assure that there would be no abrupt change in the management and to make available to the purchaser his knowledge of the affairs and properties of Fifteen Oil Company. Within the six months period, Cain, on behalf of his father, wrote a letter to the purchasing corporation demanding further development of one of the leases which the purchasing corporation had acquired by the sale. Copies of the letter were sent to some twenty other owners of the mineral interests who then also demanded development. The purchasing corporation chose to surrender the lease. Cain then acquired his father's interest in the lease and in turn sold it for more than $40,000.00. The purchasing corporation sued Cain for breach of fiduciary duty in that he took advantage of his special knowledge and confidential relationship and on that basis recovered judgment for some $57,000.00. The Supreme Court held that the contract for severance pay was an arms-length transaction which concerned only the giving of advice upon request, and that such a corporate contract for consultation did not create a fiduciary duty "beyond the framework of the agreement." Thus, the majority opinion held that Cain was in a fiduciary relation only when asked for advice by Tennessee, and was under no duty to refrain from acting adversely to Tennessee's interest in other matters. *See:* Pelletier, Corporations, 21 Sw.L.J. 134, 136–138 (1967).

Likewise, Mr. Leavell after an arms-length sale agreed to be chairman of the board and to provide discretionary consulting service to CHL. This was obviously a limited undertaking and no complaint is made regarding any breach by him in those undertakings.

A large group of the complaints against Mr. Leavell complain of misrepresentation as to various assets being made at the time of the original sale and that because of this, Leavell breached a fiduciary duty. As previously pointed out, the original sale was an arms-length transaction and at that time involved no breach of a fiduciary duty.

Finally, CHL complained of some twenty actions taken by Leavell and as set forth in its requested Special Issue No. 10, subdivisions 10e through 10x inclusive, they all related to purported actions taken by Leavell beginning March 17, 1978, and thereafter. As previously pointed out, the theory relied on by the Defendants was that these actions excused all payments then or thereafter owed under the Management

and Consulting Agreements and there was no proof offered that CHL had been damaged by any specific amount. As previously pointed out, any right of CHL to partially rescind the contracts had been waived by their treating the sale and all contract as continuing. *Hanks v. GAB Business Service, Inc., supra.*

Perhaps these were legitimate complaints that existed against Mr. Leavell that would amount to a breach of his fiduciary duties and where damages were presented. To compel a trial court to comb and weed them out of over thirty defective complaints would be placing an impossible burden on the trial court. Those were waived by the excessiveness of defective complaints. Rule 274, Tex.R.Civ.P. For the reasons stated, the Defendants' first point is overruled.

Partially interwoven with the Defendants' first point is its third point which is to the effect that the trial court erred in refusing to instruct or otherwise explain the contract documents or Mr. Leavell's fiduciary duties to CHL. Some thirty-one requested instructions were submitted of which at least eight were instructions concerning the fiduciary duties of Charles Leavell. We have overruled the complaints regarding the failure of the trial court to submit special issues on Leavell's personal liability for breach of his fiduciary obligations. The instructions on those duties are immaterial.

The balance of the requested instructions in the main, explain the contract documents. Under Rule 277, definitions are required of only those words or phrases given a distinctive meaning by law. *Taylor v. Lewis,* 553 S.W.2d 153 (Tex.Civ. App.—Amarillo 1977, writ ref'd n.r.e.). The only function of an explanatory instruction in the charge is to aid and assist the jury in answering issues submitted. *Union Oil of California v. Richard,* 536 S.W.2d 955 (Tex.Civ.App.—Beaumont 1975, no writ). The trial court has considerable discretion in submitting instructions. A review of the requested instructions on the whole reveals that most were merely evi-dentiary and would not have aided the jury in answering the ultimate issues as to breach of the contracts. The third point is overruled.

The eighth point of error is that the cumulative effect of the trial court's errors caused an erroneous judgment in favor of The Leavell Company and that the trial court undermined and implied its disagreement with virtually all of the Defendants' contentions. Essentially the Defendants repeat their complaints made under all points. Having already considered the individual points of error and having determined that they do not individually constitute reversible error, we further conclude that their cumulative effect did not constitute reversible error. The point of error is overruled.

The Plaintiff presents one cross-point complaining of the action of the court in refusing to enter judgment in favor of The Leavell Company for its attorney's fees in accordance with the jury answers to Special Issue No. 7 and asks that judgment should be rendered for its attorney's fees. According to the Plaintiff's pleadings it was entitled to be awarded its attorney's fees by virtue of a provision contained in the stock purchase agreement. The contractual provision on which they rely is paragraph 25 of the stock purchase agreement and it provided as follows:

> In the event any party hereto shall fail to perform any of its obligations under this Agreement such party hereby agrees to pay all reasonable expenses including reasonable attorneys' fees which may be incurred by any party hereto in enforcing or attempting to enforce this Agreement whether or not any suit or legal proceedings shall be brought.

The Plaintiff's pleadings and claims which it presented at trial do not seek to enforce the stock purchase agreement nor were damages sought thereunder. Rather, the Plaintiff's claims and the jury's verdict on damages relate solely to the Management and Consulting Agreements which contain no provision for attorney's fees. The

Plaintiff's evidence on attorney's fees reflects that every activity on which their claim was based was for enforcement of the Management and Consulting Agreements. No evidence was produced by the Plaintiff related to any breach of the stock purchase agreement. There being absent any contractual entitlement to attorney's fees, none can be awarded on that basis. *Tenneco Oil Company v. Padre Drilling Company,* 453 S.W.2d 814 (Tex.1970). Recovery under Article 2226, Tex.Rev.Civ. Stat.Ann., was not involved. There were no pleadings nor proof offered of the conditions precedent under the statute. The cross-point is overruled.

The judgment of the trial court is affirmed.